(No. 14160.—Decree affirmed.)

The People *ex rel.* Jacob Seemann *et al.* Appellants, *vs.*
Greer College *et al.* Appellees.

*Opinion filed April 19, 1922.*

1. Pleading—*general demurrer to bill is sufficient to raise question of validity of statute.* A general demurrer to a bill in chancery for want of equity is sufficient to entitle the defendant to raise any question on the argument going to the substance of the bill and the right to relief, including the constitutionality of the statute under which the bill is filed, without pointing out the particular provisions of the constitution which it is claimed the statute violates.

2. Constitutional law—*application of constitutional provision against amending act by reference to title, only.* To constitute a violation of the provision of section 13 of article 4 of the constitution against amending an act by reference to its title, only, the purported amendment must make some change in the subject matter of the original act; and the constitutional provision is not violated by the addition of a section which does not affect the existing act.

3. Same—*act of 1919 amending act of 1874 in relation to acquisition of property by educational institutions is invalid.* The act of 1919 (Laws of 1919, p. 927,) purporting to amend the act of 1874 relating to the acquisition of property by institutions of learning, by the addition of a new section thereto, is invalid, in that the new section is not merely an addition but is an amendment of the subject matter of the original act by reference to its title, only, as the new act provides for a reversion of property to a donor or his heirs in certain cases covered by the original act and for which neither said act nor the general law made any provision.

4. Same—*legislative classification must rest upon a reasonable basis.* Although the legislature is not bound to extend legislation to all cases to which it might possibly reach, and it may recognize degrees of necessity and apply remedies where they are most needed, a classification which has no reasonable basis is essentially arbitrary and is invalid.

5. Same—*the act of 1919 relating to universities and colleges makes unreasonable classification.* The act of 1919 (Laws of 1919, p. 927,) providing for a reversion to the donor or his heirs whenever property given for the establishment or maintenance of an educational institution is diverted from the use for which it was given, makes an unreasonable classification in limiting the privilege

to donors at whose request the institution was organized and in not providing for a like reversion in the case of property given to maintain institutions already organized, as no reasonable basis exists for such distinction.

6. CHARITIES—*property given to charitable use will not revert, in case of abuse, without express condition.* If the trustees of a charity abuse the trust, mis-employ the charity fund or commit a breach of the trust the property does not revert to the heirs or legal representatives of the donor unless there is an express condition of the gift to that effect.

7. CORPORATIONS—*in absence of statute, an individual cannot sue for dissolution of corporation.* Without statutory authority a court of chancery has no jurisdiction to decree the dissolution of a corporation, nor can a corporation be dissolved at the instance of an individual, but it is within the power of the legislature to authorize such proceedings.

APPEAL from the Circuit Court of Vermilion county; the Hon. JOHN H. MARSHALL, Judge, presiding.

ROBERT R. RODMAN, and ACTON & ACTON, for appellants.

EDWARD J. BRUNDAGE, Attorney General, GUNN & PLATT, DYER & DYER, and G. H. COUCHMAN, (CLARENCE N. BOORD, of counsel,) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

"An act to revise the law in relation to universities, colleges, academies and other institutions of learning," in force July 1, 1874, provided in section 1 as follows: "That any corporation which has been, or may be incorporated under any general law of this State, for the purpose of establishing or conducting a university, college, academy, or other institution of learning in addition to the powers granted by such law shall have power to take by purchase, gift, grant, devise or bequest, and to hold for the use of such corporation, any real or personal property whatever, and to sell, convey, mortgage, or otherwise use the same, as may be considered most conducive to the interests of such institu-

tion. But such corporation shall have no power to divert any gift, grant, devise or bequest from the specific purpose designated by the donor." (Hurd's Stat. 1921, chap. 144, sec. 1.) In 1919 an act was passed which by its title purported to amend the former act and in its body purported to amend it by adding a section to be known as section 1-*a*, as follows: "That if any corporation mentioned in section 1 of this act, that has been incorporated at the request of any person who has given or devised property for the purpose of establishing and maintaining any institution mentioned in section 1 of this act, heretofore has or hereafter shall divert such gift or devise to any purpose other than the specific purpose for which it was given or devised, or, if it shall become impracticable to maintain such institution, or, if such corporation shall be guilty of a misuser or non-user of its principal corporation franchises, then a bill in chancery may be filed in the circuit court of the county in which such institution is located, or in the county where any real estate that was given or devised to such institution, is situated, against such corporation, in the name of the People of the State of Illinois, upon the relation of the Attorney General, State's attorney, or the donor of the property given or devised, or the heirs-at-law of any deceased donor, and a summons may thereupon issue to any county in the State for said corporation, and the practice shall be the same as other proceedings in chancery; and upon a hearing, if the facts alleged in the bill are proven, the court shall enter a decree dissolving the corporation, and vesting the title in any property, so given or devised, in the donor thereof, or, in case of his death, in his heirs-at-law then surviving." (Hurd's Stat. 1921, chap. 144, sec. 1-*a.*)

On January 3, 1921, a bill was filed under the latter act in the circuit court of Vermilion county in the name of the People, on the relation of Jacob Seemann and others, against Greer College and the Attorney General, which alleged that John Greer died about January 1, 1890, and the

relators are his surviving heirs; that Greer College is a corporation organized on May 28, 1890, under the act of 1872 concerning corporations, for the purpose of establishing and maintaining an institution of learning at Hoopeston, in Vermilion county, for the higher education of young men and women; that it was organized at the special request of John Greer, who by his will executed on August 12, 1889, and probated in the county court of Iroquois county, gave and bequeathed to three trustees, "the said persons to become a body corporate, with power to nominate and elect successors, to act as trustees for the fund and for the purposes in this clause mentioned," $25,000,— $15,000 for the erection of a building in Hoopeston, to bear the name of Greer College and to be used for the higher education of young men and women, $10,000 to be invested and the income applied to the maintenance of the college building and grounds and other purposes connected with the promotion and maintenance of the college. The will also gave the residue of the testator's property to the "said trustees of Greer College for such purposes connected with the welfare of said college as to them, the said trustees, may seem expedient." Before the death of the testator and after the execution of his will he desired the trustees named in the will to proceed at once to erect the college and at his request they proceeded to do so, and the testator, for the purpose of carrying out the plan set forth in his will, conveyed to them certain real estate in Iroquois county and gave to them $25,000 in cash, notes and securities, and after his death they received under the will $25,000 in cash, notes and securities as trustees for Greer College. With the money so received they procured a conveyance to the corporation of real estate in Hoopeston upon which they erected a building for college purposes at a cost of $50,000, which was completed in the year 1890 and was occupied and used for the purpose of maintaining an institution for the higher education of young men and women as contem-

plated by the will. After the incorporation of the college the trustees conveyed to it the lands which the testator had conveyed to them, and also delivered to the corporation all the moneys bequeathed to them as trustees for Greer College, and the corporation still holds all that property. At the time of the incorporation of Greer College it was located in Hoopeston and for a number of years the attendance was sufficient for its successful operation, but after 1905 the increase in number and resources of colleges and universities was such that Greer College was unable to compete for students; and the attendance became so small and the revenue derived from the property of the college and the tuition of students so reduced that by the end of the school year 1913 the number of students had decreased to about ten, and though the trustees did everything in their power to maintain an institution of learning as contemplated by the testator it became impracticable to do so. About January 6, 1914, Greer College made an agreement with the board of education in Hoopeston by which the college gave the use of the college building to the board of education to conduct a high school, and the board of education has ever since used such building for a high school except one room in the basement, and Greer College employed the superintendent of the high school as president of Greer College at a nominal salary of $200. There were ostensibly about six students in Greer College, though, in fact, they were merely pupils attending the high school but living outside the high school district and paying tuition and were therefore enrolled as students in Greer College. Greer College hires and pays two teachers, ostensibly for teaching in the college but in fact they give practically all their time to teaching in the high school, though paid from funds derived from the property of Greer College donated by John Greer.

As a basis for relief the complainants aver that Greer College was incorporated at the request of John Greer, who

gave and devised property for the purpose of establishing and maintaining an institution of learning known as Greer College, and that it has become impracticable to maintain such institution; that the defendant Greer College has diverted said gift and devise of John Greer to a purpose other than the specific purpose for which it was given and devised, and has been and is now guilty of a mis-user of its corporate franchises. The prayer of the bill was that the court would enter a decree dissolving the corporation and vesting the title in all of the real estate described, in the heirs of John Greer. The defendants filed separate demurrers to the bill, which were sustained, the complainants elected to abide by their bill, it was dismissed for want of equity, and the relators have appealed.

The appellants contend that the demurrers did not present the question of the constitutionality of the act because they did not point out the particular provisions of the constitution claimed to be violated. The demurrers were general, and it was not necessary to state any ground of demurrer other than the want of equity in the bill. No statute of this State and no rule of court requires demurrers to state the reasons why the pleading demurred to is insufficient. A general demurrer to a bill in chancery for want of equity is sufficient to entitle the defendant to raise any question on the argument going to the substance of the bill and the right to relief. In *Roberts* v. *City of Evanston,* 218 Ill. 296, a bill was filed which attacked the constitutionality of a particular section of an act, and it was held not sufficient to raise the question of the constitutionality of another section of the same act. The case has no bearing on the question here.

On the part of the appellees it is contended that the act in question is in violation of article 4 of the constitution, in that it amends the act of 1874 by reference to its title, only. The act, in both the title and the body, purports to amend the former act, but the appellants argue that in

fact it does not change the provisions of the original act in any way but merely adds a section, which provides a complete method of dissolving the corporation and restoring to the donor certain gifts made to the corporation. The original act provided that the corporation should have no power to divert any gift, grant, devise or bequest from the specific purpose designated by the donor. Under the general powers of a court of chancery, the Attorney General, representing the people in the supervision of public charities, could procure a decree restraining the diversion of the property from the purpose designated by the donor and requiring its application to such purpose. He could also by *scire facias* or *quo warranto* in a court of law procure a dissolution of the corporation for failure to exercise its corporate franchise. These powers were not derived from the statute but existed by virtue of the general jurisdiction of courts of law and equity, and in case of the dissolution of a corporation, by virtue of the same general principles, the title to the property given to it by John Greer would revert to his heirs-at-law. *Mott* v. *Danville Seminary*, 129 Ill. 403; *Danville Seminary* v. *Mott*, 136 id. 289; *Presbyterian Church* v. *Venable*, 159 id. 215; *Miller* v. *Riddle*, 227 id. 53.

While the act of 1919 professed to amend the act of 1874, the question whether it was in violation of the constitutional limitation in question does not depend upon the form of the statute but whether it was, in fact, an amendment of the existing law. If it was an independent act, complete in itself, it did not violate the constitutional provision even though by implication other provisions of the law in conflict with it were modified. (*People* v. *Wright*, 70 Ill. 388; *People* v. *Knopf*, 183 id. 410.) The amendment of an act, to be within the prohibition of section 13 of article 4 of the constitution, must make some change in the provisions of the act upon the subject matter to which the original relates, and does not include additional provisions not affect-

ing existing provisions. (*People* v. *Exton*, 298 Ill. 119; *People* v. *Shultz*, id. 125.) In *People* v. *Knopf, supra,* it was said that the character of an act, whether amendatory or complete in itself, must be determined not by its title, alone, or its purporting to be an amendment of existing laws, but by a comparison of its provisions with prior laws left in force, and if the new act is a complete and entire act of legislation on the subject with which it deals it will not be subject to constitutional objection, but if it merely attempts to amend the law by mingling new provisions with the old or by adding new provisions so as to create out of the old and new together the law on that subject, it must be regarded as amendatory of the old law, and the law amended must be inserted at length in the new act. The act of 1919 did not change the law in regard to the remedies which previously existed to prevent a diversion of property from the designated purpose or to bring about a dissolution of the corporation. It did, however, change the rights of the corporation and of the donor in regard to diversion of property prohibited by section 1 of the act of 1874. By the latter act the legislature enacted into a statute the rule of equity that a gift to a charitable use cannot be changed from the purpose declared by the donor and applied to other uses. The statute, however, provided no penalty for disobedience of the prohibition of diversion of the gift or means to enforce its observance. The act of 1919 amended this defect by enacting that as to some of the corporations and some of the gifts mentioned in section 1 of the act of 1874, such corporations, by the diversion of such gifts from the purpose designated by the donor, should subject themselves to the forfeiture of their franchises at the suit of the donor or his heirs and the property itself should be forfeited to the donor or his heirs. In the absence of a statute no such consequences follow the diversion to some other purpose of the property given for a charitable use. If the trustees of a charity abuse the trust, mis-employ the

302–35

charity fund or commit a breach of the trust, the property does not revert to the heirs or legal representative of the donor unless there is an express condition of the gift that it shall revert to the donor or his heirs in case the trust is abused. (Perry on Trusts, sec. 744.) Neither, in the absence of a statute, can an individual maintain a suit to procure the dissolution of a corporation. (*Hunt* v. *LeGrand Roller Skating Rink Co.* 143 Ill. 118.) The act of 1919 amends section 1 of the act of 1874 by depriving some of the corporations mentioned in that section of their immunity from any penalty for a violation of the prohibition of that section and by imposing severe penalties for such violation. This is something more than additional legislation without interfering with existing rights but leaving the previous law unchanged and would effect a substantial change in the legal rights and liabilities of the parties under section 1 of the act of 1874. An examination of the act and comparison of its provisions with those of the former act leave no doubt of the character of the act of 1919 as an amendment of that of 1874.

Without statutory authority a court of chancery has no jurisdiction to decree the dissolution of a corporation nor can a corporation be dissolved at the instance of an individual. It is within the power of the legislature, however, to provide by statute for the dissolution of a corporation at the suit of an individual by a proceeding in chancery. (*Hunt* v. *LeGrand Roller Skating Rink Co. supra.*) The object of the act of 1919 was to provide for the return to the donor of property given to any corporation mentioned in section 1 of the act of 1874, for the purpose of establishing and maintaining any institution mentioned in section 1, where such corporation was incorporated at the request of such donor and where the property has been diverted from the purpose for which it was given or the maintenance of the institution has become impracticable or the corporation has mis-used or ceased to use its principal

corporate franchise, or, in case of the death of the donor, to provide for the return of the property to his heirs, and also in such case to authorize the donor or his heirs, in case of his death, to cause dissolution of the corporation. In the absence of this statute the property did not revert to the donor or his heirs on account of the diversion of the property from its designated purpose, the fact that the maintenance of the institution had become impracticable or that the corporation had mis-used its franchise.

It is insisted by the appellees that if it is within the province of the legislature to declare that this property shall be vested in the heirs of the donor in the manner provided by the act in question such act is unconstitutional because it is discriminatory between persons in the same situation, is based upon a classification which is not reasonable, and confers special privileges upon individuals, in violation of section 22 of article 4 of the constitution. The legislature is not bound to extend legislation to all cases to which it might possibly reach. It may recognize degrees of necessity for legislation and apply remedies where they are most needed. A distinction in legislation is not arbitrary if any state of facts can reasonably be supposed to sustain it, but it must rest upon a reasonable basis, and a classification is not valid which has no reasonable basis but is essentially arbitrary. The remedy given by the act in question does not extend to all donors of property to educational institutions, but only to those who have given or devised property for the purpose of establishing and maintaining an institution mentioned in section 1 of the original act, and then not to all such donors but only to such donors at whose request the corporation was organized. The object is to enable donors to educational institutions, or their heirs, to recover the property given if diverted from the designated purpose and to cause the dissolution of the corporation for the same reason. No reasonable distinction is discoverable between gifts made for the purpose of establishing and

maintaining an institution and gifts made for the purpose of maintaining an institution, or between gifts made to corporations organized at the request of the donor and gifts made to similar corporations already organized. It may be reasonable for the legislature to enact that a corporation shall be subject to a forfeiture of its franchise for the diversion of property given to it from the purpose designated by the donor, at the suit of the donor or his heirs. There is no good reason why the donor of property who has requested the incorporation of the institution should have the privilege of declaring a forfeiture of the corporate franchise because of the diversion of his gift from its designated purpose, while the donor of property of much greater value at the same time, or earlier or later, has no such privilege. The legislature may have authority to enact that a corporation which has received a donation of property for establishing an institution of learning from a donor at whose request the corporation was organized, shall forfeit the title to such property if the corporation diverts it from the purpose designated by the donor and that the title shall be vested in the donor or his heirs. There is no reason why the donor of property given for the maintenance of the institution should not have the same right though the institution was not incorporated at his request. The law which gives to one of these donors the right to recover the property and denies it to the other has no reasonable basis for the distinction but is purely arbitrary. A person who gives property to a college already in existence should be entitled to an equal remedy with the person who gives property to procure the organization of the corporation. A very small original donation may be made for the purpose of organizing a college, academy or other institution of learning. After its organization very much larger gifts may be made immediately or long after for the purpose of maintaining the same institution, without which its purpose could not have been carried out. Its maintenance would

have been impracticable and its abandonment have been necessary without the latter donations. There is no reason why those who have contributed to its endowment and maintenance should not have the same remedy to compel the application of their donations to the purpose for which they were given or to recover their property after it had been diverted, as the person who made the first contribution by reason of which the institution was organized.

The decree of the circuit court will be affirmed.

*Decree affirmed.*