THE STATE OF ILLINOIS, Appellee, *vs.* JOSEPH AJSTER
*et al.* Appellants.

*Opinion filed October 28, 1925.*

1. PROHIBITION—*when case may be treated as pending on writ of error.* The Prohibition act, conferring jurisdiction on the county courts in injunction cases, makes no provision for an appeal, but where an appeal is taken and the appellee makes no motion to dismiss but joins in error, the case may be treated as pending on writ of error, which, being a writ of right by common law, may be prosecuted in all cases unless prohibited by statute.

2. SAME—*provision of Prohibition act conferring equity jurisdiction on county courts is not invalid.* Section 23 of the Prohibition act, conferring complete equity jurisdiction on county courts to hear and determine all injunction cases brought under the act, does not violate section 13 of article 4 of the constitution, providing that an act shall include only the one subject expressed in the title.

3. SAME—*the Prohibition act is not a local or special law.* The Prohibition act is not a local or special law and does not violate section 29 of article 6 of the constitution, but it operates uniformly on all persons in the State, and does not affect the uniformity of the organization, jurisdiction, powers, proceedings and practice of all courts of the same class or grade and the force and effect of the process, judgments and decrees of such courts.

4. SAME—*court may punish contempt without regard to statute.* Courts have inherent power to punish contempts, and where the court, in fixing punishment for violation of an injunction under the Prohibition act, exercises its jurisdiction in accordance with the usual practice and its inherent power, regardless of statutory authority, and there is nothing in the record to show that in fixing the punishment the court was governed by the limitations prescribed by the statute, the effect of such limitations upon the court's inherent power to protect itself will not be considered.

5. SAME—*advice of counsel does not excuse violation of an injunction.* Where an injunction issued under the Prohibition act specifically directs that certain premises be closed and shall not be occupied for any purpose by anyone for a period of one year subsequent to the date of the decree, the fact that the parties enjoined were advised by counsel that they might keep the place open until the State's attorney sent a deputy sheriff to put on the injunction is no defense to the charge of contempt in violating the injunction.

6. SAME—*petition for citation for contempt need not state how defendants had knowledge of decree.* A petition for warrants for the arrest of defendants for violation of an injunction under the Prohibition act and praying that they be made to show cause why they should not be held in contempt of court is sufficient where it recites that each of the defendants had full and ample notice and knowledge of the entry of the decree; and it is not necessary to allege that an announcement had been made in open court for the entry of the order, or that the defendants had been told by the court or the State's attorney, or any other person, that the decree had been entered.

7. INJUNCTIONS—*injunction is binding from time it is granted.* From the time it is granted an injunction is binding upon the parties to the suit who have notice of it, without the service or the issuing of any writ.

APPEAL from the County Court of LaSalle county; the Hon. HARRY B. RECK, Judge, presiding.

RICHOLSON, ARMSTRONG & O'MEARA, (H. L. RICHOLSON, of counsel,) for appellants.

OSCAR E. CARLSTROM, Attorney General, RUSSELL O. HANSON, State's Attorney, and VIRGIL L. BLANDING, for appellee.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

Joseph Ajster and Anton Ajster, the appellants, are cousins and were the owners of a building in the city of LaSalle, the ground floor of which was occupied by Joseph as a so-called soft drink parlor and Anton was employed by Joseph in carrying on the business. On February 13, 1925, the State's attorney of LaSalle county filed a bill in the county court alleging that the appellants had unlawfully sold intoxicating liquor for beverage purposes in the building without any permit or authority of law and praying for an injunction. On the same day the defendants appeared, waived service of process, answered the bill and consented to an immediate hearing of the cause, and the

complainant having filed a replication and the court having
heard the testimony of witnesses, a decree was entered find-
ing that the allegations of the bill were true and the defend-
ants had sold whisky and other intoxicating liquors for bev-
erage purposes upon the premises for several months past
without any permit from the Attorney General, in violation
of the terms of the Illinois Prohibition law, and perma-
nently enjoining them from manufacturing, selling, barter-
ing, disposing of, keeping or storing any intoxicating liquor
containing more than one-half of one per cent of alcohol
in said premises and from continuing the common and
public nuisance, and further ordering that said nuisance be
abated; that said real estate should not be occupied for any
purpose by anyone for a period of one year; that the sher-
iff close, seal and lock up the premises and destroy any in-
toxicating liquor that might be found thereon and post upon
the front door thereof a copy of the writ of injunction.
On March 4 the State's attorney filed a petition in the
county court representing that on March 3, 1925, the de-
fendants disobeyed the terms of said decree, kept open the
premises for the transaction of business and kept for sale
in the premises on that day wine containing more than one-
half of one per cent of alcohol by volume. The petition
prayed that warrants might issue for the arrest of the de-
fendants and that they should show cause why they should
not be held in contempt of court. The defendants entered
their motion to dismiss the petition, which was denied.
There was a hearing upon the evidence of witnesses and
affidavits, the court adjudged the defendants to be in con-
tempt of court, and decreed that they each should be im-
prisoned in the county jail ninety days. They prayed an
appeal to this court, which was allowed.

The right of appeal in any case exists only by virtue of
a statute granting it. The Illinois Prohibition act, which
confers jurisdiction of cases of this character on the county
court, makes no provision for an appeal. A writ of error,

however, is a writ of right by the common law and may be prosecuted in all cases involving liberty or property rights unless prohibited by statute. (*Haines* v. *People,* 97 Ill. 161.) No motion has been made to dismiss the appeal but the appellee has joined in error, and in such case the cause is properly to be treated as pending on a writ of error. *People* v. *Elbert,* 287 Ill. 458.

It is argued that the judgment is contrary to the evidence, that the county court was without jurisdiction of the subject matter, that sections 23 and 25 of the Prohibition act are unconstitutional, and that the answers of the appellants presented a good defense, which purged them of the charge of contempt.

It is claimed that there was no competent evidence in the record tending to show that any intoxicating liquors were found on the premises. The evidence shows that on March 3 a constable, Virgil Holland, having a search warrant, went to the premises in question about nine o'clock in the evening, accompanied by the State's attorney and two other persons. The building was lighted but the curtains were down and the front door was locked, as was the side door on the east side of the building. They went around to the back door, found it unlocked and entered. About nine men were in front of the bar, on which was the sum of thirty cents, and Anton was behind it with a bottle in his hand, which he struck on the edge of the sink underneath the bar. It did not break, but he struck a second blow, which broke it. M. R. Smith, one of the men accompanying the constable, who had been working for the State's attorney, testified that he saw Anton break the bottle which he had in his hand and that witness gathered up the broken glass and brought it back to the State's attorney's office, where it had been in the safe ever since. Smith took seven bottles of the contents of the sink, and he testified in regard to Exhibit 3 that it was a pint bottle which he took from behind the bar and it had been in the safe in the State's

attorney's office since; that it contained the fluid which was in the sink underneath the bar, and that he tested the liquor by tasting it. He testified that he had used alcoholic liquors for over five or six years, was familiar with the taste and smell of alcoholic liquor containing more than one-half of one per cent of alcohol, and could tell by smelling and drinking it whether or not a liquid contained more than one-half of one per cent of alcohol, and that the liquor in Exhibit 3 did contain more than one-half of one per cent of alcohol.

William R. Tydeman testified that he is a chemist and could determine by chemical analysis whether liquors contained alcoholic contents; that he examined the contents of the bottle produced by the previous witness (Exhibit 3) and found that it contained one and two-tenths per cent of alcohol by volume. It is argued that there was no proper foundation laid for the testimony of the witness Tydeman, because it was not shown that the liquid he tested was the same which was claimed to have been found in the premises in question or was in the same condition when tested as when taken. The testimony of Smith identified the bottle and its contents, and there is nothing in the record to discredit this testimony.

It is further argued that the appellants had no knowledge of the contents of the injunction; that Anton was not present at the hearing and that Joseph did not understand what was done there or that he was enjoined from keeping the place open. The decree itself recites 'the appearance of both the appellants by their solicitor, Samuel P. Hall. Joseph testified that the first time the officers came down to the premises was January 23; that after that he and Anton made an arrangement about the building; that he told Anton that he was going to quit,—was going to see his sister in Chicago and look for a job there; that Anton could run the business for himself if he wanted to; that about a week later witness went to Chicago; that after January 23 he did not manufacture, sell or keep intoxicating

liquor in the building or any other place; that he was in court on February 13 and Tony was not there; that witness was alone and did not know what was done that day; that he paid his fine and that was all, but he did not know anything about any order enjoining him from keeping the building open or keeping anything in it; that the State's attorney and judge represented him in court that day; that he had no counsel, and Judge Hall came to his place after that and told him that he could keep open until the State's attorney sent down the deputy sheriff to put on the injunction; that he could keep open so long as they did not come down. On cross-examination he said that Judge Hall told him to keep the place open, and he was keeping it open but was not running it; that he left it to Tony, and Tony was running it after Hall told him he could; that the day of the raid on March 3 he went into the place in the daytime and bought a couple of cigars, going in at the front door, which was open.

Anton did not testify but made an affidavit that prior to February 13 he was engaged in the operation of a soft drink parlor and was present in court at the hearing of the bill of complaint; that he understood English very imperfectly and only the most simple language; that when he was in court at the hearing he understood nothing of what occurred there; that if there was an order entered at that time he was not advised of it nor was he advised of any of the provisions of any order; that he understood that if any order was entered he would be served with notice of its contents; that no notice of an injunction or writ was served upon him, and after the hearing he proceeded to dispose of the stock of cigars, candies and soft drinks which he had on hand, as he supposed he had a right to do until such time as the closing order should be entered, when he supposed the sheriff would attend to the closing of the building; that he was advised by his counsel that he might lawfully keep the place open until he was served with a notice

or writ, and he has never done any act with intent to disobey the order of the court.

It is admitted that Joseph was present at the hearing, but the statements of the two appellants are directly contradictory. Joseph testified that Anton was not present, but Anton states, not inadvertently but in an affidavit deliberately prepared by his counsel, that he was present in court at the hearing of the bill of complaint. He must have known the fact, though the affidavit also states that he was unfamiliar with the language used and understood nothing of what occurred at the hearing, and he further states that he was advised by his counsel that he could lawfully keep the place open until he was served with a notice or writ. He must, therefore, have understood that the hearing involved the question of his right to keep the place open, and his subsequent conduct indicates that he knew that he had not such right. He knew what was involved, for after the first raid, which was made on January 23, he testified that he made an arrangement about the building with Anton; that he was going to get out and look for a job in Chicago, and told Anton that he could run the business for himself if he wanted to. When he came into court after the bill was filed he signed a written entry of appearance and consented to an immediate hearing and the entry of a decree by the court, including a provision closing the first floor and basement of the building. His testimony shows that he had knowledge that the court had ordered a writ issued to close the place, and that he was advised that he could keep it open as long as the State's attorney did not send down the sheriff to close it. He claims to have acted on the advice of counsel that he could so keep the place open, though he knew the court had ordered it closed.

The appellants' counsel say in their brief that Anton was not in court at the time the decree was entered. He swears himself in an affidavit that must have been written by some counsel, that he was in court.

Counsel further say in their brief that appellants were not represented by counsel when the decree was entered,— at least their counsel was not in court and he made no defense in their behalf. The decree says that the defendants appeared by their solicitor, Samuel P. Hall, and an entry of appearance was introduced in evidence dated the day before the hearing and signed by Joseph Ajster. At the time of the second raid, on March 3, Anton was keeping the place open for the sale of intoxicating liquors. It is true the front door and the side door were closed and the curtains were down, but the back door was open, access to the room was free, and the evidence justified the conclusion that Anton was engaged in the sale of intoxicating liquors to customers then in the room. The precaution taken in closing the front and side doors and lowering the curtains, and Anton's action in breaking the whisky bottle which he had in his hand when the officers entered and emptying the contents in the sink, were inconsistent with his professed belief that he might lawfully keep the place open and his declaration that he had never done any act with intent to disobey the order of the court.

The appellants contend that the county court was without jurisdiction to enter the decree because section 23 of the Prohibition act, which confers complete equity jurisdiction on the county courts to hear and determine all injunction cases brought under the act, contravenes various sections of the constitution. The first is section 13 of article 4, and it is said that the provision enlarging the jurisdiction of the county courts is not covered by the title of the Prohibition act, and that section 23 can be regarded only as an amendment by reference, only, without inserting at length the section amended, being section 7 of the act of March 26, 1874, to extend the jurisdiction of county courts. It has been held at the present term that section 23 does not violate these provisions of the constitution. (*State v. Milauskas, ante,* p. 198.) Neither is it a local or special

law, nor does it offend against section 29 of article 6 of the constitution. It is a general law in force equally in every place in the State. It operates uniformly on all persons, and does not affect the uniformity of the organization, jurisdiction, powers, proceedings and practice of all courts of the same class or grade and the force and effect of the process, judgments and decrees of such courts.

It is contended that section 25 of the Prohibition act, which prescribes the method of procedure in case of violation of an injunction and purports to fix the punishment in cases of contempt, also violates several sections of the constitution, but it is unnecessary to consider the question of the constitutionality of this section. Courts have an inherent power to punish contempts. (*People* v. *Peters,* 305 Ill. 223.) Whether the statute be regarded as merely declaratory of the law as it previously existed, or as unconstitutional, in neither case would the present judgment be affected, for the proceeding is in accordance with the practice which prevailed before the statute was passed, and the punishment is such as the court was authorized to impose without reference to the statute. The court exercised its jurisdiction in accordance with the usual practice and its inherent power existing regardless of statutory authority, and imposed punishment for a violation of the injunction within the limits of the court's power, regardless of the statute. Nothing in the record shows that the court in fixing the punishment was governed by the limitations prescribed by the statute, and in such case the effect of these limitations upon the court's inherent power to protect itself will not be considered. *State* v. *Zimmerman,* 317 Ill. 197.

The appellants contend that the decree by its own terms was not in force at the time of the alleged violation, and base their argument on the language of the decree that the defendants "be and they are hereby permanently enjoined from manufacturing, selling, * * * and that a writ of injunction shall issue forthwith under the seal of this court,"

followed by the order for the abatement of the nuisance and the closing of the premises, and the concluding paragraph of the decree, which is as follows: "It is further ordered, adjudged and decreed that the said injunction shall be binding upon all persons whomsoever, even though not named herein, from and after the time when they have severally had knowledge of the entry of this order and the issuance of said injunction." It is claimed that the direction that the writ of injunction shall issue under the seal of the court, and the last paragraph of the decree, suspended the operation of the injunction until there was a writ actually issued of which the appellants had knowledge. It is an elementary principle that an injunction is binding upon the parties to the suit who have notice of it, from the time it is granted, without the service or the issuing of any writ. (High on Injunctions, secs. 1421, 1422, 1444.) The last clause of the decree which has been quoted was manifestly added not for the purpose of postponing the force of the injunction until the issuance of a writ and notice to the appellants, but to make it binding upon all persons not named in the decree after such persons had knowledge of the entry of the decree. The advice of counsel to the appellants that they might keep the place open until the State's attorney sent down a deputy sheriff to put on the injunction was no defense to the charge of contempt of the decree. (High on Injunctions, sec. 1420.) The decree enjoined the appellants from manufacturing, selling or keeping intoxicating liquor, and directed that the premises be closed and should not be occupied for any purpose by anyone for a period of one year subsequent to the date of the decree. It was definite and certain, needing no interpretation. If the defendants, instead of complying with the plain words of the decree, chose to rely upon the statement of counsel that they need not obey it they did so at their peril. Advice of counsel to disobey an injunction is no defense to a proceeding for contempt for such disobedience. The case is one

not of misinterpretation of the decree but of disobedience to it.

It is further contended that the court should have dismissed the petition because it does not appear from it that the defendants knew of the entry of the decree or were apprised of its contents. It is claimed that the only allegation in the petition charging notice is as follows: "Your petitioner respectfully represents that each of said defendants had full and ample notice and knowledge of the entry of said decree against him and each of said defendants knew or should have known the provisions of said decree." The argument is that the first part of the allegation is simply a conclusion of the pleader, which states no facts from which the court had a right to conclude that the defendants had knowledge of the entry of the decree, and the latter part of the allegation fails to allege that the defendants knew of the provisions of the decree but alleges that they should have known of the decree. Regardless of the superfluous allegation that the defendants should have known the provisions of the decree, the first part of the allegation alleges the fact that the defendants had notice and knowledge of the entry of the decree against them. That is the ultimate fact necessary to be shown. It was not necessary to allege that an announcement had been made in open court of the entry of the order, or that the defendants had been told by the court or the State's attorney or any other person that the decree had been entered. Those facts, if proved, would have been evidence of the ultimate fact or the defendants' knowledge of the decree, and the allegation that each of the defendants had full and ample notice and knowledge of the entry of the decree was sufficient.

The judgment will be affirmed. *Judgment affirmed.*