[File No. 6135.]

STATE OF NORTH DAKOTA ON THE RELATION OF JOHN GAMMONS, Appellant, v. GEO. F. SHAFER et al., Constituting the State Auditing Board of the State of North Dakota, Respondents.

(246 N. W. 874.)

Opinion filed February 10, 1933.

*Scott Cameron,* for appellant.

130

*Arthur J. Gronna,* Attorney General, *Charles A. Verret,* Assistant Attorney General, and *B. F. Spalding,* Special Assistant Attorney General, for respondents.

132

PER CURIAM: This is an appeal from an order quashing an alternative writ of mandamus issued to the Auditing Board and denying the application of petitioner for a peremptory and permanent writ requiring the State Auditing Board to audit and allow the certified claim of appellant for his salary for the month of December, 1932, in the amount for which the same was certified and presented. Appellant claims that under the Session Laws of 1923 his salary was fixed in the sum of $2,800 per year, payable monthly in the sum of $233.34.

Appellant claims that section 2 of the initiated measure, purporting to reduce salaries of government officials and employees, submitted to and voted for by a majority of the qualified electors of the state in November, 1932, is unconstitutional and that he is entitled to his salary as provided by the laws of 1923.

The initiated measure is as follows, to-wit:

"Petition for the Initiation of a Law Reducing and Fixing Salaries or Compensation of Governor, Lieutenant-Governor, Secretary of State, State Auditor, State Treasurer, Attorney General, Superintendent of Public Instruction, Commissioner of Insurance, Commissioner of Agriculture and Labor and each Commissioner of Railroads, to be Elected at the General Election in November, ·1932, and Subsequent Elections, and Reducing and Fixing the Salaries of all Appointive State Officials, Members of all Appointive State Boards, Bureaus and Commissions, now Provided for by Law, Reducing and Fixing the Salaries or Compensation of all

Deputies, Assistants, Secretaries, Clerks and other Employees of State Officials and State Boards, Bureaus and Commissions, defining the Persons and Classes of Persons whose Salaries or Compensation are Reduced, Specifying the Time when Said Law Shall Take Effect, and Repealing All Acts, or Parts of Acts insofar as they Conflict Herewith.

"To the Secretary of State of the State of North Dakota:

"We, the undersigned, qualified electors of the State of North Dakota, consisting of over ten thousand of the electors at large, hereby propose and initiate the following law, and we request that the same be placed upon the ballot in the manner and form provided by law and submitted to the qualified electors of the State of North Dakota for their approval or rejection at the general election to be held November 8, 1932.

"As such petitioners we hereby present and propose the following ballot title under which such law shall be submitted, to-wit:

"Reducing and Fixing the Salaries or Compensation of Certain Elected State Officials, and Reducing and Fixing the Salaries or Compensation of all Appointive State Officials, Members of all State Appointive Boards, Bureaus and Commissions Provided for by Law, and Reducing and Fixing the Salaries or Compensation of all Deputies, Assistants, Secretaries, Clerks and Employees of all State Officials, Boards, Bureaus and Commissions.

"An Act reducing and fixing the salaries or compensation of the Governor, Lieutenant-Governor, Secretary of State, State Auditor, State Treasurer, Attorney-General, Superintendent of Public Instruction, Commissioner of Insurance, Commissioner of Agriculture and Labor and each Commissioner of Railroads, to be elected at the general election to be held November 8, 1932, and all subsequent elections, and reducing and fixing the salaries or compensation of all appointive state officials and members of all appointive state board, bureaus and commissions provided for by law, and reducing and fixing the salaries or compensation of all deputies, assistants, secretaries, clerks and employees of all state officials, state boards, bureaus and commissions, defining the persons and classes of persons whose salaries are reduced

or fixed, specifying the time when this act shall take effect, and repealing all acts or parts of acts insofar as they conflict herewith.

"Be It Enacted by the People of the State of North Dakota:

"Section 1. The Governor shall receive an annual salary of Four Thousand Dollars ($4,000.00); the Lieutenant Governor shall receive an annual salary of Eight Hundred Dollars ($800.00); the Attorney General shall receive an annual salary of Three Thousand Dollars ($3,000.00); the Secretary of State, State Auditor, State Treasurer, Superintendent of Public Instruction, Commissioner of Agriculture and Labor, and the Commissioner of Insurance shall each receive an annual salary of Two Thousand Four Hundred Dollars ($2,400.00); and each Commissioner of Railroads shall receive an annual salary of Two Thousand Four Hundred Dollars ($2,400.00).

"Section 2. The salaries or compensation of all appointive state officials, including members of all appointive state boards, bureaus and commissions, now provided for by law, and the salaries or compensation of all deputies, assistants, secretaries, clerks and employees of all state officials, state boards, bureaus and commissions are hereby reduced and fixed as follows: The salaries or compensation of all persons mentioned in this section, which are now fixed by law, are hereby reduced and fixed at an amount equalling eighty per cent of the amount at which the salaries of such persons were paid or fixed as of the month of January, 1932, whether such salaries or compensation are fixed or computed on an annual, monthly or per diem basis; the salaries or compensation of all persons mentioned in this section which are not fixed by law shall in no event hereafter exceed an amount equaling eighty per cent of the amount at which such salaries not fixed by law were paid or computed as of the month of January, 1932, whether such salaries or compensation are fixed or computed on an annual, monthly or per diem basis, and until otherwise changed by the proper authority such salaries are hereby fixed at eighty per cent of the amount computed or paid as of the month of January, 1932; provided, that the salary or compensation of no deputy, assistant, secretary, clerk or employee shall exceed the salary or compensation of the state officer or member of the state board, bureau, or commission by or under whom such deputy, assistant, secretary, clerk or employee is employed or acts; and provided further that nothing in this Act contained shall be construed

as prohibiting or preventing the legislature from abolishing or consolidating any or all Offices, Boards, Bureaus or Commissions now provided for by law or from eliminating the provision of any law fixing the amount of salary or compensation of any official, member of any Board, Bureau or Commission, or any deputy, assistant, secretary, clerk or employee, or from reducing below the amounts provided by this Act the salary or compensation of any person or persons.

"Section 3. The terms elected and elective state officials shall include all state officials specified in Section 1 hereof. The terms appointed or appointive state officials and members of appointive state boards, bureaus and commissions and the terms deputies, assistants, secretaries, clerks and employees shall include all such persons whose office or employment is held by virtue of any appointment or employment however made, other than an election by the voters of the state, whether or not such office or employment is created by an act of the Legislature.

"Section 4. In the event any section or portion of this act should be held invalid or inapplicable to any person or class of persons, such invalidity shall not affect the remaining sections or portions or the application of the provisions of this act to any other persons or classes of persons.

"Section 5. As to the salaries and compensation of elective state officials, this act shall apply to all elected at the general election to be held in November, 1932, and at all subsequent elections. As to the salaries and compensations of all other persons than elective state officials, this act shall take effect and be in force on and after December 1, 1932.

"Section 6. All salaries provided in this act shall be full compensation for all official services, and all fees received or charged by any such official or person for any act or service rendered in any official capacity shall be accounted for and paid over by them monthly to the State Treasurer and be credited to the general fund of the state.

"Section 7. All acts and parts of acts insofar as they are in conflict herewith are hereby repealed."

It is the contention of respondent that § 25 of the Constitution was amended so as to include the initiative and referendum and as amended it is a complete basic law for initiated and referred legislation and

other provisions of the Constitution relating to legislation do not apply to initiated and referred legislation.

Section 25 of the Constitution is the first section of article 2 relating to the legislative department and as originally adopted it simply provided that the legislative power should be vested in the senate and house of representatives and all the other provisions of article two relate to the legislative department and to legislation. When the people decided to exercise legislative power directly they did not provide a new article relating exclusively to such legislation, but they amended the first section of the article in the Constitution relating to the legislative department by retaining the express language of the section and adding thereto the provisions relating to the initiative and referendum. Such provisions are now a part of § 25 of article 2 and the provisions of the Constitution limiting and regulating the exercise of the legislative power apply to initiated and referred legislation, the same as to laws passed by the Legislative Assembly.

In Wallace v. Zinman, 200 Cal. 585, 254 Pac. 946, 62 A.L.R. 1341, in referring to the initiative power, the court said: "It is only another system added to our plan of state government by a permissive amendment to the Constitution, but it was at no time intended that such permissive legislation by direct vote should override the other safeguards of the Constitution." Galvin v. Contra Costa County, 195 Cal. 686, 235 Pac. 450; State ex rel. Gibson v. Richardson, 48 Or. 309, 85 Pac. 229, 8 L.R.A.(N.S.) 362; Turnidge v. Thompson, 89 Or. 637, 175 Pac. 281; Malloy v. Marshall-Wells Hardware Co. 90 Or. 329, 173 Pac. 267, 175 Pac. 659, 176 Pac. 589; State ex rel. Little Rock v. Donaghey, 106 Ark. 56, 152 S. W. 746. See also Daly v. Beery, 45 N. D. 287, 178 N. W. 104.

Appellant claims that the initiated measure violates § 61 of the Constitution, which provides: "No bill shall embrace more than one subject, which shall be expressed in its title." The object and purpose of the bill is to reduce the salaries or compensation of all of the officials, clerks and employees named. There is nothing deceiving about the title and although it is not necessary that the subject, as expressed in the title, should be an index to the bill, it is in fact a fairly good index. In determining the constitutionality of a legislative act under § 61 of the Constitution, the title of the act is to be construed in the light of

the general object and purpose of the act, and if so construed, the provisions of the act appear to be in furtherance of the general purpose expressed in the title, the act will be upheld as having the subject matter expressed in the title. State ex rel. Poole v. Peake, 18 N. D. 101, 120 N. W. 47; State ex rel. Gaulke v. Turner, 37 N. D. 635, 164 N. W. 924. Under the general title of an act the legislature may include any matter naturally and reasonably connected with the general subject. Cowell v. Lewis, 52 S. D. 229, 217 N. W. 218; Great Northern R. Co. v. Duncan, 42 N. D. 346, 176 N. W. 992; Thompson Yards v. Kingsley, 54 N. D. 49, 208 N. W. 949; People ex rel. Drake v. Mahaney, 13 Mich. 481. The subject of the bill as expressed in the title is broad and comprehensive enough to include all the proposed legislation.

Appellant claims that § 2 violates § 11 of the Constitution, which provides that "all laws of a general nature shall have a uniform operation." There is no merit in this contention. It is difficult to understand how the statute could be more general and while there are different classes of officials and different classes of employees, the individuals of each class are treated alike. Legislation is valid though applicable only to certain classifications if all persons subject to its terms are treated alike in like circumstances and conditions. Bratberg v. Advance Rumely Thresher Co. 61 N. D. 452, 238 N. W. 552, 78 A.L.R. 1338.

The main contention of the appellant is that § 2 of the initiative measure violates § 64 of the Constitution which provides that "no bill shall be revised or amended, nor the provisions thereof extended or incorporated in any other bill by reference to its title only, but so much thereof as is revised, amended or extended or so incorporated shall be re-enacted and published at length."

This question was not before us in Anderson v. Byrne, 62 N. D. 218, 242 N. W. 687, and Preckel v. Byrne, 62 N. D. 634, 244 N. W. 781. There we were concerned only with the sufficiency of the petition, not with the ultimate constitutional validity of the proposed legislation. This question was expressly excluded from consideration there, because we could then consider only such matters of form as the Secretary of State was required to pass upon. It was there held only that the act in question was formally complete, but the question as to whether it complied with § 64 of the Constitution was expressly reserved as not properly involved.

The title of the initiated measure purports to reduce salaries and compensation of officials and employees; the act likewise purports to reduce salaries, but neither title or act refers to any specific statute and therefore it is the contention of the respondent that it is a complete law in itself and being a complete law in itself it does not violate § 64 of the Constitution. In support of this position respondent relies upon the case of People ex rel. Drake v. Mahaney, 13 Mich. 481. At page 496, the Michigan court, speaking through Judge Cooley, said: "It is next objected that the law is invalid because in conflict with section twenty-five of article four of the Constitution, which provides that 'no law shall be revised, altered or amended by reference to its title only; but the act revised, and the section or sections of the act altered or amended, shall be re-enacted and published at length.' The act before us does not assume in terms, to revise, alter or amend any prior act, or section of an act, but by various transfers of duties it has an amendatory effect by implication, but by its last section it repeals all inconsistent acts. We are unable to see how this conflicts with the provision referred to. . . . This constitutional provision must receive a reasonable construction, with a view to give it effect. The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that the legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred to but not republished, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the constitution wisely prohibited such legislation. But an act complete in itself is not within the mischief designed to be remedied by this provision, and cannot be held to be prohibited by it without violating its plain intent."

In 1 Cooley on Constitutional Limitations, 8th ed., at page 315, it is said: "It should be observed that statutes which amend others by implication are not within this provision; (§ 64) and it is not essential

that they even refer to the acts or sections which by implication they amend."

The restriction on amendatory legislation in the constitutions of all the states are practically the same as those provided in § 64 of our Constitution. That part of § 21 of the Constitution of Michigan construed by Judge Cooley in the case of People ex rel. Drake v. Mahaney, supra, is identical with § 64 of the Constitution of the State of North Dakota and hence it may be said to be a construction of the restriction on amendatory legislation in the North Dakota Constitution. It may also be said to be the settled law of the land, as it is cited and followed in practically every case where constitutional restriction on amendatory legislation has been considered. State v. Fargo Bottling Works, 19 N. D. 396, 124 N. W. 387, 26 L.R.A.(N.S.) 872; Fitzmaurice v. Willis, 20 N. D. 372, 127 N. W. 95; Wilson v. Fargo, 48 N. D. 447, 186 N. W. 263; Ex parte Pollard, 40 Ala. 77; Lockhart v. Troy, 48 Ala. 579; State ex rel. Bragg v. Rogers, 107 Ala. 444, 19 So. 909, 32 L.R.A. 520; Mosher v. Phœnix, — Ariz. —, 7 Pac. (2d) 622; Watkins v. Eureka Springs, 49 Ark. 131, 4 S. W. 384; Little Rock v. Quindley, 61 Ark. 622, 33 S. W. 1053; St. Louis, I. M. & S. R. Co. v. Paul, 64 Ark. 83, 40 S. W. 705, 37 L.R.A. 504, 62 Am. St. Rep. 154; Farris v. Wright, 158 Ark. 519, 250 S. W. 889, 890; Grable v. Blackwood, 180 Ark. 311, 22 S. W. (2d) 41; Poch v. Taylor, — Ark. —, 54 S. W. (2d) 994; Hellman v. Shoulters, 114 Cal. 136, 44 Pac. 915, 45 Pac. 1057; Denver Circle R. Co. v. Nestor, 10 Colo. 403, 15 Pac. 714; Lake v. State, 18 Fla. 501; State ex rel. Turner v. Hocker, 36 Fla. 358, 18 So. 767; People ex rel. Klokke v. Wright, 70 Ill. 388; Timm v. Harrison, 109 Ill. 593; People ex rel. Stuckart v. Knopf, 183 Ill. 410–415, 56 N. E. 155–157; Hagler v. Small, 307 Ill. 460, 138 N. E. 849; Broder v. Krenn, 334 Ill. 256, 165 N. E. 602; Spencer v. State, 5 Ind. 41; Branham v. Lange, 16 Ind. 497; Hargis v. Perry County, 165 Ind. 194, 73 N. E. 915; Caudill v. Stidham, — Ky. —, 54 S. W. (2d) 654; Davis v. State, 7 Md. 151, 61 Am. Dec. 331; People ex rel. Harrington v. Wands, 23 Mich. 385; Swartwout v. Michigan Airline R. Co. 24 Mich. 389; Atty. Gen. v. Parsell, 100 Mich. 170, 58 N. W. 839; People v. Shuler, 136 Mich. 161, 98 N. W. 987; Fornia v. Wayne Circuit Judge, 140 Mich. 631, 104 N. W. 147; Grinnell Bros. v. Moy, 230 Mich. 26, 203 N. W. 167; People v. Stimer,

248 Mich. 272, 226 N. W. 899, 67 A.L.R. 552; Jackson County v. Dicker, 260 Mich. 78, 244 N. W. 235; State ex rel. Maguire v. Draper, 47 Mo. 29; State ex rel. Farmers Mut. Ins. Co. v. Moore, 48 Neb. 870, 67 N. W. 876; Nebraska Loan & Bldg. Asso. v. Perkins, 61 Neb. 254, 85 N. W. 67; State ex rel. Baughn v. Ure, 91 Neb. 31, 135 N. W. 224; Evernham v. Hulit, 45 N. J. L. 53; People ex rel. Everson v. Lorillard, 135 N. Y. 285, 31 N. E. 1011; Lehman v. McBride, 15 Ohio St. 573; Grant County v. Sels, 5 Or. 243; Fleischner v. Chadwick, 5 Or. 152; Warren v. Crosby, 24 Or. 558, 34 Pac. 661; Searight's Estate, 163 Pa. 210, 29 Atl. 800; Pinkerton v. Pennsylvania Traction Co. 193 Pa. 229, 44 Atl. 284; Gilbert's Estate, 227 Pa. 648, 76 Atl. 428; Garrett v. Turner, 235 Pa. 383, 84 Atl. 354; Clark v. Finley, 93 Tex. 171, 54 S. W. 343; Anderson v. Com. 18 Gratt. 295; Re Dietrick, 32 Wash. 471, 73 Pac. 506; Spokane Grain & Fuel Co. v. Lyttaker, 59 Wash. 76, 109 Pac. 316; Re Wickesberg (Wis.) 244 N. W. 561; State v. Cain, 8 W. Va. 720; Karraker v. Ernest (D. C.) 4 F. (2d) 404; Mills v. Smith (C. C. A. 9th) 177 Fed. 652; 59 C. J. 871, § 455; Sutherland, Stat. Constr., § 135, p. 173.

A statute complete in itself and which is not dependent upon other statutes for the complete expression of the legislative purpose does not conflict with § 64 of the Constitution.

The act complained of in the case of People ex rel. Drake v. Mahaney, 13 Mich. 481, supra, was an act to establish a police government for the city of Detroit, approved February 28, 1865, Laws of 1865, page 99, and which provided that the offices of city marshal and assistant marshal of the city of Detroit are hereby abolished and the duties of the said officers shall hereafter be performed by the superintendent of police or by the captains and sergeants of police, under his direction in accordance with the provisions of this act. This statute certainly does not depend upon any other. It is complete in itself. It abolishes the offices of marshal and assistant marshal and transfers the duties of said officers to the police officers under the new act and their duties and powers *are defined in the new act.* Clearly this was an independent act which was not dependent on any other law and did not conflict with the counterpart of § 64.

Next to People ex rel. Drake v. Mahaney, respondent relies on People v. Stimer, 248 Mich. 272, 226 N. W. 899, 67 A.L.R. 552. In this

case it was contended that in the passage of act 13 of the Public Acts of 1921, the legislature sought to revise, alter and amend act 181 of the Public Acts of 1919 and this without repassing the latter act or publishing the same at length, as required by the Michigan Constitution (art. 5, § 21). The court said: "We do not understand that there was any attempt or intention thereby to revise, alter, or amend the provisions of the act of 1919. By the express terms of the 1921 enactment, the department of animal industry was abolished; and the powers and duties of that department were transferred to the state department of agriculture. The portion of Act 181 of the Pub. Acts of 1919 which prescribes these powers and duties was not 'revised, altered, or amended.' It still stands as a part of the statutory law of the state, and therefore there was no occasion for the re-enactment or republication of that portion of the statute. This was the construction placed upon the constitutional provision by Mr. Justice Cooley over 60 years ago, and it has since been considered settled law in this state." In this case three of the judges dissented upon the theory that the act is not complete in itself and is therefore unconstitutional.

In the case of State v. Fargo Bottling Works Co. 19 N. D. 396, 124 N. W. 387, 26 L.R.A.(N.S.) 872, supra, this court had under consideration chapter 187 of the laws of 1909, defining intoxicating liquors, which does amend § 9366 of the Revised Code of North Dakota, but as the court says, it is complete in itself. It does not refer to any other law, is not a part of any other law and is not in any way dependent upon any other law. In all of the cases wherein § 64 has been construed, it is held that a law so complete in itself that it does not depend upon any other statute is constitutional, although it may modify existing statutes or amend them by implication. On the other hand, if the law is not complete in itself but depends upon some other existing law, or if there is an attempt to amend an existing law by reference to its title only and without re-enacting and publishing it at length, so much thereof as is revised, amended or extended or so incorporated is held void with the same unanimity.

In the case of State v. Fargo Bottling Works Co. 19 N. D. at page 410, 124 N. W. 387, 26 L.R.A.(N.S.) 872, this court said: "The purpose of this provision (Const. § 64) is clearly enough that of preventing an amendment to an existing statute by means of a legislative

bill which contains merely the amendatory words or a reference only to the title of the act sought to be amended, and does not give in full the text of the act as it will appear when amended." An examination of chapter 187, Session Laws, 1909, the law construed in that case, discloses a complete law in itself.

A very late case on the subject is the case of Broder v. Krenn, 334 Ill. 256, 165 N. E. 602. In this case the court said: "Section 13 of Article 4 was not intended to limit or control repeals by implication. If an act is complete in itself and does not purport to amend a prior act, it is not within the constitutional prohibition, although its effect may be to repeal certain provisions contained in prior acts. If the new act makes changes in an existing act by adding new provisions and mingling the new with the old on the same subject, the later act must be considered an amendment of the former and within the constitutional prohibition, even though it professes to be an independent act. Nelson v. Hoffman, 314 Ill. 616, 145 N. E. 688; People ex rel. Seeman v. Greer College, 302 Ill. 538, 135 N. E. 80. In Galpin v. Chicago, 269 Ill. 27, 109 N. E. 713, L.R.A.1917B, 176, an act which purported by its title to amend the Fees and Salaries act by adding § 9a, regarding the collection and payment into the treasury of certain fees by the state's attorney in certain counties, was held to be unconstitutional for the reason that its effect was to amend § 8 of the Fees and Salaries act, and was therefore an amendment of that section without setting out the section amended but by reference to the title of the act only."

If an act is not complete in itself and is clearly amendatory of a former statute it is within the constitutional inhibition whether or not it purports on its face to be amendatory or an independent act. Copland v. Pirie, 26 Wash. 481, 67 Pac. 227, 90 Am. St. Rep. 769; Sovereign v. State, 7 Neb. 409; Re Buelow (D. C.) 98 Fed. 86, 3 Am. Bankr. Rep. 389; Re Lovett (D. C.) 2 F. (2d) 307, 308; 25 R. C. L. 874.

The character of an act, whether amendatory or complete in itself, is to be determined not by its title alone nor by the question whether it professes to be an amendment of an existing law, but by comparison of its provisions with prior laws in force, and if it is complete on the subject with which it deals, it will not be within the inhibition, but if

it is not complete on such subject so that it cannot stand alone it is within the inhibition. See State v. Ajster, 318 Ill. 230, 149 N. E. 297; People ex rel. Cant v. Crossley, 261 Ill. 78, 103 N. E. 537.

The first question then is, is section two of the initiated measure complete in itself. Section 2 provides: "The salaries or compensation of all appointive state officials, including members of all appointive state boards, bureaus and commissions, now provided for by law, and the salaries or compensation of all deputies, assistants, secretaries, clerks and employees of all state officials, state boards, bureaus and commissions are hereby reduced and fixed as follows: The salaries or compensation of all persons mentioned in this section, which are now fixed by law, are hereby reduced and fixed at an amount equalling eighty per cent of the amount at which the salaries of such persons were paid or fixed as of the month of January, 1932, whether such salaries or compensation are fixed or computed on an annual, monthly or per diem basis." This part of the section applies to the salaries or compensation of all appointive state officials and employees whose salaries are fixed by law and it attempts to change all laws relating to salaries and compensation by reducing all salaries and compensation to an amount equalling eighty per cent of the amount of the salaries fixed as of the month of January, 1932.

The remaining portion of the section is even more baffling to the voter. It provides "the salaries or compensation of all persons mentioned in this section which are not fixed by law, shall in no event hereafter exceed an amount equalling eighty per cent of the amount at which such salaries not fixed by law were paid or computed as of the month of January, 1932, whether such salaries or compensation are fixed or computed on an annual, monthly or per diem basis and until otherwise changed by the proper authority such salaries are hereby fixed at eighty per cent of the amount computed or paid as of the month of January, 1932; provided that the salary or compensation of no deputy, assistant, secretary, clerk or employee shall exceed the salary or compensation of the state officer or member of the state board, bureau or commission by or under whom such deputy, assistant, secretary, clerk or employee is employed or acts."

It is clearly the intention of this section to reduce the salaries or compensation of all appointive state officials, including members of all

boards, bureaus and commissions and all employees whose salaries are fixed by law and also the salaries and compensation of officials, clerks and employees whose compensation or salary is not fixed by law. Some of the boards and bureaus are authorized by law to employ clerks and assistants when necessary and it attempts to reduce the compensation and salary of such clerks and employees. It is clearly an attempt to amend all the laws regulating the salaries or compensation of all appointive officials and employees, including statutes authorizing boards or officials to fix compensation. Certainly no elector could tell from this section what the salaries or compensation of any of the many officers or employees, who come under it, were for the month of January, 1932, nor what salary or compensation he was voting for such office or position, when he cast his ballot for the initiated measure.

Section 1 of chapter 182 of the Laws of 1923 creates a State Securities Commission, consisting of the Governor, Attorney General and Secretary of State and one executive officer (appellant), who shall also act as ex officio secretary of the commission. He is required to file a regular official oath, a bond of ten thousand dollars and his salary is fixed at $2,800 per annum, payable monthly.

Section 2 of the initiated measure attempts to reduce the salary to eighty per cent of the salary fixed by section 1 of said Chapter 182. One cannot tell what appellant's salary is except upon a comparison of the initiated measure with section 1 of Chapter 182 and by taking eighty per cent of the salary as fixed by said section 1. This proves conclusively that § 2 of the initiated measure is not complete in itself, but is dependent on every other statute of the many statutes which it seeks to amend.

A law is amended, when it is, in whole or in part, permitted to remain, and something is added to it or taken from it, or it is in some way changed or altered to make it more complete or perfect, or to fit it the better to accomplish the object or purpose for which it was made, or some other object or purpose. Falconer v. Robinson, 46 Ala. 340; United States ex rel. Palmer v. Lapp (C. C. A. 6th) 244 Fed. 377–385; 59 C. J. 850, 851.

Reference to the authorities cited above to the effect that the constitutional provisions limiting and regulating the exercise of legislative power are applicable to legislation effected through the initiative

process, in the light of the circumstances in which the act in question was submitted, shows the importance of observing such salutary requirements as are contained in § 64. The chief evil at which this section is aimed is the framing "of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect." Cooley, J., in People ex rel. Drake v. Mahaney, 13 Mich. 481, supra. If it be important to guard against deception of legislators when their attention is absorbed exclusively in the enactment of legislation, how much more important it is that the voters participating only occasionally in the enactment of legislation be protected against deception as to the effect of a proposed law? It is a matter of common knowledge and of current history in this state that at the time the act in question was pending diverse opinions of competent persons were expressed as to the effect of the proposed enactment upon existing statutes and previous regulations concerning salaries. A proper observance of section 64 of the Constitution would clearly have avoided such uncertainties and the possibility of reasonable persons being deceived as to the effect of such pending legislation.

The measure purports to amend all existing laws relating to salaries or compensation of public officials and employees of the state government by reducing salaries and compensation, leaving the law thus changed otherwise intact so that the new provisions are intermingled with different provisions in the old law. The statute is clearly within the class of statutes which are not complete in themselves and which offend against § 64 of the Constitution.

Section 2 of the initiated measure is clearly unconstitutional and the writ will issue.

NUESSLE, Ch. J., and BURKE, BIRDZELL, BURR and CHRISTIANSON, JJ., concur.