## The People ex rel. Nelson B. Jones v. Benjamin D. Pritchard, Commissioner of the State Land Office.

*Legislative power; Primary School lands.* Section 2 of Art. xiii of the Constitution, which provides that the income of the Primary School fund shall be appropriated annually to the specific object for which the fund exists, does not deprive the Legislature of the power of regulating, from time to. time, the State policy regarding the Primary School lands as they shall deem proper.

*Amending statutes: Re-enactment: Reference to statute amended.* It is not essential to the validity of an amendment of a statute, that the section as it previously stood should be set forth in full, as well as the section as amended.

A section of the Compiled Laws having been amended, a subsequent amendment will not be invalid because it was made by reference to the number of the section as it stood in the Compiled Laws;—the amending act enacting that "it shall read as follows," and the section, .as amended, being set forth at length.

*Heard July 7. Decided July 12.*

Application for *mandamus:*

By Nelson B. Jones to compel the Commissioner of the State Land Office to issue a certificate for the purchase of lot 5, block 245, in the city of Lansing, of which the relator claims to be the purchaser on the 28th of October, 1869, at a sale of Primary School lands forfeited for non-payment of interest. The ·relator sets forth in his petition, that the Commissioner bases his refusal to issue the certificate upon the provisions of act No. 85 of the Session Laws of 1869, and claims that the relator is not entitled to a certificate for said lot until the expiration of one year from said 28th day of October, A. D. 1869, and that during said time the lot is subject to redemption.

*Dart & Wiley,* for relator.

I. Section 2 of Article XIII. of the Constitution requires

that the proceeds from the sales of Primary School lands shall be and remain a perpetual fund, the interest and income of which * * * * * * * shall be inviolably appropriated and *annually* applied to the specific object of the original gift, grant, or appropriation.

We claim that act No. 85 of S. L. 1869, in its pretended amendment of Sec. 2463 of C. L., is unconstitutional, in that it prevents the annual interest due upon the unpaid price for school lands being annually applied, but actually extends the time of payment of such interest between one and two years, placing it beyond the power of an annual application.—*Newell v. The People, 7 N. Y., 9.*

II. Act No. 85 of S. L. 1869, is unconstitutional and void, as it does not conform to the requirements of Sec. 25 of Art. IV. of the Constitution of this State.—*Langdon v. Applegate, 5 Indiana, 327; Rogers v. The State, 6 Indiana, 31.*

III. Act No. 85 of S. L. of 1869, so far as relates to the pretended amendment of Sec. 2463 of Compiled Laws, is a nullity. At the time of this pretended amendment there was no section 2463 compiled, or in the Compiled Laws, this section having been amended by S. L. of 1859, had wholly disappeared from the Compiled Laws, and was known as act No. 13 of S. L. of 1859, or Sec. 2463 of said act.—*Smith's Commentaries, § 784-6.* If the section amended does not require republishing—*13 Mich., 481*—the Legislature were required by Sec. 25 of ?Art. IV. of the Constitution of this State to name this act revised, and in this case the act to be revised and amended was act No. 113 of S. L. of 1859, and not Sec. 2463 of C. L.

IV. The petitioner having, at the annual sales, bid this lot at public auction, for the sum of $360, and paid the 25 per cent. required, he is entitled to have the certificate issued to him in accordance with Sec. 2446 of C. L.

*S. F. Seager*, for respondent.

The only ground, upon which relator rests his claim to relief by the suit prayed for, is that the act under which the land in question was sold (act No. 85, Laws 1869), is unconstitutional, and that action of Commissioner must be governed by the law as it stood prior to the passage of that act. It is alleged that the act is in violation of said constitutional provisions:

I. That it violates section 25, article IV. It purports to be an amendment of section 2463 of Compiled Laws. In 1859 this section was amended by requiring owner of land to pay, upon redeeming, the expenses of appraisement and sale.—*Laws 1859, p. 309*. It is claimed the act of 1869 is inoperative, as it does not refer to the act of 1859; that it aims to amend a certain section of the Compiled Laws which had no existence.

As to the effect of amendments similar in form to those of 1859 and 1869, see *Ely et al. v. Holton, 15 N. Y., 597·* After the amendment of 1859, a reference to section 2463 must mean that section as found not in the compilation of 1857, but as found in the laws of 1859. As to the particularity required in entitling acts, see *People v. Mahoney, 13 Mich., 497 ; Cooley's Const. Lim., 157*. Even if position of relator be correct, and section 2463 had no existence at the time of the passage of the act of 1869, the purpose of the act is sufficiently defined in the title, and it would operate as new statute.

II. But the principal objection urged against the act of 1859, is that it is opposed to section 2, Art. XIII. of State Constitution.

(*a*) The disposition made of the funds received on account of sales, etc., is all this constitutional provision seeks to control. The terms, upon which the school lands were to

be disposed of, has been from the very first, left entirely to the Legislature. The price, and time of payment, is regulated not by the Constitution, but by statute. The act of 1869 makes the sale upon forfeiture, like the sale for unpaid taxes,—a *conditional* one. The moneys received upon such sale become the property of the State only in case of failure of the former owner to redeem. Until after such failure they are not a part of the income referred to in the clause of the Constitution cited.

(*b*) The rights of the relator are in no way prejudiced by the disposition of the money paid by him at forfeited sales. The relator must show special injury from an alleged violation of a constitutional requirement, before he can ask the Court to pass upon the question.—*Cooley's Const. Lim., 163.*

The Superintendent of Public Instruction might very properly inquire into the disposition made of the school money, but the relator shows no interest in himself that would require the Court, at his request, to examine the constitutionality of the act of 1869. It is not the manner of conducting sale, but the disposition of proceeds, that the constitutional provision regulates, and though the act in question might, so far as relates to the proceeds of sale, be unconstitutional, the relator's rights are not affected; and even should the Court hold the act unconstitutional in that respect, it would by no means follow that relator was entitled to relief.

COOLEY, J.

A *mandamus* is applied for in this case to compel the Commissioner of the State Land Office to issue to the relator a certificate of purchase of a city lot in Lansing which was purchased by him at a sale of the same as forfeited school lands. The sale was made on the 28th day

of October, 1869, and the purchase by relator is not contested, but the Commissioner insists that under the law then in force the previous purchaser, whose rights were forfeited, was entitled to a year's redemption, and that the certificate of purchase could not issue to Jones until the year had expired without redemption being made. The relator, on the other hand, insists that the statute which purports to give the right of redemption is for various reasons unconstitutional and void.

The statute in question is act number 85 of the General Laws of 1869, which is entitled "An act to amend section 2435 and section 2463 of the Compiled Laws, relative to the payment of moneys by purchasers of the trust fund and swamp lands to county treasurers, and the forfeiture and redemption of said lands." The first constitutional objection to this statute, as we understand counsel, is, that the amended section 2463 gives to the original purchaser a right to redeem forfeited school lands after a sale thereof which was not allowed under previous statutes, and thereby comes in conflict with section two of article thirteen of the Constitution, which requires the interest and income of the primary school fund to be "annually" appropriated to the specific objects for which the fund exists.

If there is any validity whatever to this objection, it precludes the Legislature from making any change in the laws regarding the Primary School lands, the effect of which would be either to accelerate or postpone the payment of moneys that might come due upon the sales. According to the relator's position, when a contract of purchase has once been made, the payments which it provides for in each year, belong to the fund which must be distributed that year under an imperative mandate of the Constitution, and however much it might be for the interest of the fund that new regulations should be made which should allow pay-

ments at other periods, it is not in the power of the Legislature to make such regulations.

We are somewhat at a loss to know how to treat this argument, inasmuch as its unsoundness appears to us so clear that no effort at demonstration can make it more plain and palpable. The purpose of the constitutional provision was evidently as far as possible from any such consequences as the relator insists upon, and had nothing more in view than the periodical appropriation of the income received by the State from the Primary School fund to its proper and legitimate purposes. That clause did not propose to take from the Legislature the power of regulating from time to time the State policy regarding the Primary School lands as should be deemed proper; and if the result should be to increase or reduce the income for the year from the Primary School fund, the Constitution would nevertheless be complied with, both in terms and in spirit, if the sum actually received was properly appropriated. There is not, we think, the slightest reason to doubt that the act of 1869 was within the constitutional authority of the Legislature.

It is insisted also that the act in question is void, because, being amendatory of a certain section of a previous statute, the section amended is not set forth and published at length, as required by section twenty-five of article four of the Constitution. The section *as amended* is given in full, but it is claimed that the section as it previously stood should have been given also. We do not think this was the intention of the Constitution. It is a full compliance with the terms as well as the purpose of that provision, if the section as amended is set forth at length, with such reference to the old law as will show for what the new law is substituted. See *Tuskaloosa Bridge Co. v. Olmstead, 41 Ala., 9.*

21 MICH.—E².

The only other objection to the act of 1869 is that it is inoperative, because it purports to amend a section of the Compiled Laws which had no existence. It seems that section 2463 of the Compiled Laws, which governs the case, had previously been amended by another statute; and the effect was, it is claimed, to repeal the section as it stood in the Compiled Laws, leaving the amendatory statute to stand instead thereof. And the argument is that a subsequent amendatory statute could not properly be entitled "An act to amend section 2463 of the Compiled Laws," because there was no longer any such section, and an act thus . entitled could have nothing to operate upon.

This reasoning seems to us too refined for practical value. Under our Constitution the mode of amending a section of a statute is by enacting that the section in question "shall read as follows." The position of the section in the original statute is not changed, and there is no reason why subsequent amendments of the same section should not be made by reference to its number in the original statute.

The *mandamus* applied for must be denied, with costs.

The other Justices concurred.