THE STATE v. THE AMERICAN FORCITE POWDER MANU-FACTURING COMPANY.

50   75
45e 448

50   75
66  398

1. In an indictment under the act of March 22d, 1886, relating to game fish, it is sufficient to describe the interdicted material alleged to have been unlawfully put into the lake, as "acid," in the language of the statute, without specifying what particular "acid" it was.

2. The first two counts of the indictment defective in this case, because there is no averment that the acid was discharged into the water in

such quantity as would prove fatal to the fish therein, nor that any of said fish had perished in consequence of the defendant's act.

3. It is not necessary in legislation amending statutes to set forth the amended statute, and also the statute as it was before amendment. The mischief to be remedied by the constitutional amendment does not require it, nor does the language of the constitution. It is sufficient to set forth the amended act in full.

On indictment removed from the Morris Sessions.

The following indictment was found at the October Term, 1886, of the Morris Oyer and Terminer, and was found under the act of the legislature of March 22d, 1886:

"Morris county, to wit: The grand inquest for the State of New Jersey, in and for the body of the county of Morris, upon their oath present that the American Forcite Powder Manufacturing Company, a corporation, on the twenty-first day of April, in the year of our Lord one thousand eight hundred and eighty-six, at the township of Roxbury, in the county of Morris aforesaid, and within the jurisdiction of this court, unlawfully and willfully did allow to flow and be discharged into the waters of a certain pond and lake then and there situate, known as Lake Hopatcong, said pond and lake then and there being stocked with and inhabited by bass, pickerel and sunfish, certain acid which will kill and destroy said fish, contrary to the form of the statute in such case made and provided, and against the peace of this state, the government and dignity of the same.

"And the grand inquest aforesaid, upon their oath aforesaid, do further present the American Forcite Powder Manufacturing Company, a corporation, on the twenty-first day of April, in the year of our Lord one thousand eight hundred and eighty-six, and on divers other days and times between that day and the day of the taking of this inquisition, with force and arms, at the township of Roxbury, in the county of Morris aforesaid, and within the jurisdiction of this court, unlawfully did allow to flow and be discharged into a certain lake of this state then and there situate, known as Lake Hopatcong,

inhabited by pickerel, bass, sunfish and perch, certain acid and deleterious substances which will kill said fish, contrary to the form of the statute in such case made and provided, and against the peace of this state, the government and dignity of the same.

"And the grand inquest aforesaid, upon their oath aforesaid, do further present the American Forcite Powder Manufacturing Company, on the twenty-first day of April, in the year of our Lord one thousand eight hundred and eighty-six, and on divers other days and times between that day and the day of the taking this inquisition, with force and arms, at the township of Roxbury, in the county of Morris aforesaid, and within the jurisdiction of this court, unlawfully and willfully did place in and allow to flow and be discharged into a certain stream of fresh water then and there situate, which said stream of water empties into a certain lake of this state known as Lake Hopatcong, certain acid and deleterious substance which will kill and destroy fish, to wit, a large quantity of sulphuric acid, whereby the bass, pickerel, sunfish and perch inhabiting the aforesaid Lake Hopatcong were then and there, by means of the said sulphuric acid being so placed in and allowed to flow and be discharged into the said stream, and by said stream carried into said lake as aforesaid, killed and destroyed, contrary to the form of the statute in such case made and provided, and against the peace of this state, the government and dignity of the same.

"WILLARD W. CUTLER, <i>Prosecutor.</i>"

The following is the act of March 22d, 1886 (*Pamph. L., p.* 118), above referred to:

"A further supplement to the act entitled 'An act to amend and consolidate the several acts relating to game and game fish,' approved March twenty-seventh, one thousand, eight hundred and seventy-four.

" 1. Be it enacted by the senate and general assembly of the State of New Jersey, that the nineteenth section of the act to which this is a supplement be amended so as to read as follows :

"[19. And be it enacted, that no person, persons or corporation shall place in any fresh water stream, lake or pond, any lime or other deleterious substance, or any drug or medicated bait, with intent thereby to injure, poison or catch fish, nor place in or allow to flow or be discharged into any pond, lake or stream stocked with or inhabited by trout, bass, pickerel, pike, sunfish or perch, any drug, acid, gas tar or any deleterious substance whatever, which will kill or destroy said fish.   Any person or persons or corporation violating the provisions of this act shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be punished by imprisonment for a period of not more than two years, or by a fine of not more than two thousand dollars, or by both such fine and imprisonment, at the discretion of the court before which such conviction shall be had.]

" 2. And be it enacted, that this act shall take effect immediately."

Argued at June Term, 1887, before Justices Depue, Van Syckel and Magie.

For the state, *W. W. Cutler.*

For the defendant, *Mahlon Pitney.*

The opinion of the court was delivered by

Van Syckel, J.   This is a motion to quash an indictment which has been removed from the Morris Quarter Sessions into this court.   A copy of the indictment and of the act of the legislature under which it is found is hereto annexed.

The said act makes it a misdemeanor to place in or allow to flow or to be discharged into any pond, lake or stream stocked with or inhabited by trout, bass, pickerel, pike, sunfish or perch, any drug, acid, gas tar or any deleterious substance whatever which will kill or destroy said fish.

The first count of the indictment charges that the defendant unlawfully and willfully did allow to flow and be discharged

into the waters of Lake Hopatcong, said lake being stocked with and inhabited by bass, pickerel and sunfish, certain acid which will kill and destroy said fish.

The first objection taken to the validity of the indictment is that it does not state what kind of acid was discharged into the lake. It is the rule in this state that in indictments for misdemeanor created by statute, it is sufficient to charge the offence in the words of the statute, subject to the qualification that the crime must be set forth with such certainty as will apprise the accused of the offence imputed to him. *State* v. *Stimson*, 4 *Zab.* 9 ; *State* v. *Thatcher*, 6 *Vroom* 445 ; *State* v. *Halsted*, 10 *Vroom* 402 ; *State* v. *Startup*, 10 *Vroom* 423.

*State* v. *Fox*, 1 *Harr.* 152, is relied upon by the defendant to support his position. That was an indictment under the statute making it indictable to sell "any wine, gin, whiskey, cider, spirits, brandy or any other ardent spirits," &c., charging the defendant with selling "one-half gill of ardent spirits." The Supreme Court held that it was necessary to specify the kind of ardent spirits alleged to have been sold. The difficulty of enforcing the law under this strict rule led the legislature to pass an act, in 1838, making it sufficient to describe the liquor sold " as ardent spirits." See *Townley* v. *State*, 3 *Harr.* 311. It is clearly unwise to go further in the direction of strict pleading than the case of State *v.* Fox. From that case this, I think, may be distinguished.

The fish statute makes it unlawful to discharge into the lake any drug or acid, without specifying any drug or any acid. The crime is committed when any drug or acid, which in the statute will kill or destroy the fish therein, is so discharged. It is immaterial what particular drug or acid it may be ; it is within the interdicted class of materials or substances, if of a destructive character. The offence, therefore, at which the statute is aimed is sufficiently charged by describing the substance as " acid," in the language of the act.

In *State* v. *Wheeler*, 15 *Vroom* 88, the statute prohibited the throwing into a reservoir of water for public use any carcass of any dead animal or any offal or offensive matter what-

ever, calculated to render said water impure. In that case the indictment in the language of the statute, without specifying the kind of offal or offensive matter, was held sufficient.

In *Commonwealth* v. *Odlin*, 23 *Pick.* 275, Chief Justice Shaw sustained an indictment which charged that the defendant sold, without license, one pint of spirituous liquor. This rule has been adhered to in Massachusetts. *Commonwealth* v. *Conant*, 6 *Gray* 482; *Commonwealth* v. *Ryan*, 9 *Gray* 137.

The Indiana statute forbids the sale, without license, of any spirituous liquor by a less quantity than one quart. The courts of that state hold that the indictment need not show the kind of spirituous liquor sold: *State* v. *Grœter*, 6 *Blackf.* 105; *Fetterer* v. *State*, 18 *Ind.* 388; *Downey* v. *State*, 20 *Ind.* 82. These authorities are in line with the English case reported in 3 *Camp.* 73.

The second objection applies to the first and second counts. The allegation in these counts is that the defendant discharged into the lake inhabited by bass, pickerel and sunfish, certain acid which will kill and destroy said fish. There is no averment that the acid was discharged into the lake in such quantity as would prove fatal to fish, nor that any of said fish perished in consequence of the defendant's act.

What is the meaning of the words of the statute—"which will kill or destroy said fish?" The reasonable construction of this language is that it must be acid of such character and quantity as will destroy the fish in the lake at the time and under the circumstances existing when the acid is introduced. There may be an acid or deleterious substance which, if administered directly to fish, would be fatal to them, yet when discharged into the water in the same quantity would be harmless.

There is in this respect an absence of such averments as are necessary to show that the defendant has contravened the statute.

There are two different acts made indictable by this statute. The first is where any person places in any fresh water stream, lake or pond, any lime or other deleterious substance, or any

State v. Powder Manufacturing Co.

drug or medicated bait with intent thereby to injure, poison or catch fish. Under this branch of the act it is immaterial what quantity of the indicted material is put into the water, or whether it is sufficient to kill the fish. If it is placed there with the intent to injure, poison or catch the fish, the offence is committed.

The other branch of the act is the one under which the pleader has attempted to frame this indictment. As to that, intent is immaterial, but it must be shown that the quantity introduced will produce the destruction which the law-maker intended to prevent.

The third count is not subject to the objection which is fatal to the prior counts. That count charges that a large quantity of sulphuric acid was discharged into a fresh water stream which empties into the lake, and that by means of the said sulphuric acid being so placed in and allowed to flow and be discharged into the said stream, and by the said stream carried into said lake, the bass, pickerel, sunfish, and perch in said lake were killed and destroyed.

The court will presume that the stream of fresh water is a natural stream, and that it flowed into the lake when the noxious substance was emptied into it by the defendant.

If there is anything in the objection that the defendant is not alleged to be a corporation, the indictment is amendable under the statute. This is no more a material part of the indictment than the name of the defendant, which may always be corrected.

The only remaining objection relied upon by the defendant is the radical one that the act is unconstitutional, under article 4, § 7, ¶ 4, of the state constitution, which provides " that no law shall be revived or amended by reference to its title only, but the act revived, or the section or sections amended, shall be inserted at length."

This statute is the full text of the law as amended.

This form of legislation is approved in *Van Riper* v. *Parsons*, 11 *Vroom* 123, and in *Colwell* v. *Chamberlin*, 14 *Vroom* 387.

I think the law is correctly stated in those cases.

The same view has been taken in other states, where a like provision in the fundamental law exists. *Cooley Const. Lim.* § 152; *Jones* v. *Commissioners, &c.,* 21 *Mich.* 236; *State* v. *Draper,* 47 *Mo.* 29.

It is not necessary, in legislation amending statutes, to set forth the amended statute and also the statute as it was before amendment. The mischief to be remedied by the constitutional provision does not require it, nor does the language of the constitution.

In *Evernham* v. *Hulit,* 16 *Vroom* 53, no dissent is expressed from this view. So far as it has any bearing on the question, it is in accord with the previous cases. The contention there was that the change in the law could not be made without re-enacting a section of the act of 1876, and incorporating in it the provisions of the act of 1882. No reference was made to the previous decisions, and there was no intention, by the general expressions used, to cast any doubt upon them.

In my opinion the third count in the indictment is good, and the motion to quash should be denied. This is an important statute, intended for the preservation of rights valuable to the public and to private individuals.

While the defendant should be accorded all of his substantial rights, the court should not resort to finely drawn legal quibbles for the purpose of defeating the enforcement of the law.