### PEOPLE *v.* STIMER.

1. ANIMALS—ERADICATION OF BOVINE TUBERCULOSIS ADOPTED BY COUNTY—STATUTES.

   Adoption or approval of program of eradicating bovine tuberculosis in county both by popular vote and by action of board of supervisors was sufficient compliance with Act No. 181, Pub. Acts 1919, as amended by Act No. 89, Pub. Acts 1923, in absence of specific provision in statute providing method of adoption.

2. SAME—TEST SEVERAL YEARS BEFORE DOES NOT EXCUSE RESISTING PRESENT TEST.

   That herd of cattle had been tested three or four years ago and found free from tuberculosis would not relieve owner from submitting herd to second test under Act No. 181, Pub. Acts 1919, as amended by Act No. 89, Pub. Acts 1923, since obvious purpose of statute is to eradicate disease said to be highly infectious and contagious.

3. STATUTES—CONSTITUTIONAL LAW—TITLE OF ACT—ANIMALS.

   Act No. 13, Pub. Acts 1921, abolishing department of animal industry, creating State department of agriculture, and providing that department of agriculture should exercise powers

---

On validity and construction of statutes as to tuberculin test, see annotation in 43 L. R. A. (N. S.) 1072.

and perform duties now vested in department of animal industry as set forth in Act No. 181, Pub. Acts 1919, is not open to objection that it violates Constitution (article 5, section 21) because its title does not adequately express object of act, and because it embraces more than one object.

4. SAME—RE-ENACTING AND PUBLISHING AMENDED SECTIONS.
   Act No. 13, Pub. Acts 1921, is not open to objection that it violates Constitution (article 5, section 21) by revising, altering, and amending Act No. 181, Pub. Acts 1919, without re-enacting or publishing same at length, because, in so far as latter act is revised, altered, or amended it is done so in express language published at length, and in so far as change or alteration is by implication merely, it does not offend said constitutional provision.

5. ANIMALS—CONCLUSION THAT THERE WAS NEED FOR TEST JUSTIFIED.
   Conclusion of authorities in Jackson county that there was probable cause to believe that some of cattle in county had tuberculosis, *held,* justified by record.

6. APPEAL AND ERROR—OBJECTIONS SHOULD BE RAISED IN TRIAL COURT.
   Objections not raised in trial court not open to review.

7. CRIMINAL LAW—ANIMALS—RESISTING STATUTE PROVIDING FOR TESTING CATTLE FOR BOVINE TUBERCULOSIS.
   Defendant's conviction of violating provisions of statute requiring him to submit his cattle to test for bovine tuberculosis, *held,* justified under record.
   WIEST, MCDONALD, and POTTER, JJ., dissenting.

Error to Jackson; Williams (Benjamin), J. Submitted June 13, 1929. (Docket No. 131, Calendar No. 34,243.) Decided October 7, 1929.

Will Stimer was convicted of violating the provisions of Act No. 181, Pub. Acts 1919. Affirmed.

*James W. Helme,* for appellant.

*Wilber M. Brucker,* Attorney General, *Paul G. Eger,* Assistant Attorney General, and *Harry D. Boardman,* Prosecuting Attorney, for the people.

NORTH, C. J. The defendant herein was convicted in the circuit court of Jackson county of violating the provisions of Act No. 181, Pub. Acts 1919. The information contains two counts, one charging that the defendant, being in possession and control of live stock which was reasonably suspected of being afflicted with a contagious, infectious, and communicable disease, did refuse to allow the deputy State veterinarian to examine such stock; and the other count charges that, under the same condition, the defendant did refuse to allow an authorized veterinarian to conduct tests for bovine tuberculosis upon such cattle. The defendant has brought the case to this court by writ of error, and the assignment presents the following contentions in his behalf: (1) The statute does not authorize compulsory examination or testing; (2) the commissioner of agriculture had no authority to examine or test defendant's cattle because the program for eradicating bovine tuberculosis had not been adopted in Jackson county; (3) the law provides no definite means or method of adopting such program in the county, and therefore a prosecution cannot be maintained; (4) a former test having been made in the county in which defendant's herd was found to be free from the disease, there is no authority in law for retesting; (5) that Act No. 13, Pub. Acts 1921, is in violation of section 21, art. 5, of the State Constitution because (a) it embraces more than one object; (b) the objects of the law are not adequately stated in the title; (c) the statutes revised, altered, and amended by Act No. 13, Pub. Acts 1921, were not re-enacted and published at length.

Act No. 181, Pub. Acts 1919, as amended by Act No. 89, Pub. Acts 1923, provides:

"Sec. 4. It shall be the duty of the commissioner of animal industry to have general charge and oversight of the protection of the health of the domestic animals of the State and the guarding of the same from all contagious or infectious diseases.    *    *    * It shall be the duty of the State veterinarian to carry out the directions of the commissioner of animal industry.    *    *    *

"Sec. 6. The commissioner to whom the existence of any infectious or contagious disease of domestic animals is reported, shall forthwith, either in person or by authorized representative, proceed to the place where such domestic animal or animals are and examine the same, and if in his opinion any infectious or contagious disease does exist he is authorized to call upon the State veterinarian or other competent and skilled veterinarian to proceed to the place where said contagious or infectious disease is said to exist and examine said animal or animals,    *    *    * and the said commissioner and veterinarian are hereby authorized and empowered to enter upon any grounds or premises to carry out the provisions of this act.    *    *    *

"Sec. 11.    *    *    * It shall be unlawful for any person who owns or who is in possession or control of live stock which is affected with any such disease, or which is reasonably suspected of being so affected, to prevent or refuse to allow the State veterinarian, the commissioner, or other authorized officials to examine such stock, or to hinder or obstruct the State veterinarian or commissioner, or other official in any examination or attempted examination of any such animal or animals.    *    *    *

"Sec. 15-a.    *    *    * Whenever the commissioner shall have determined to test for tuberculosis all the cattle in any certain county where bovine tuberculosis eradication has been adopted, he shall give public notice of his determination.    *    *    * Cattle found

to be reactors to such test shall be branded, slaughtered when ordered by the commissioner, and the owners thereof entitled to such indemnities as in this act provided. It shall be unlawful for any person who owns or who is in possession of or controls any cattle to prevent, hinder, obstruct, or refuse to allow the commissioner or authorized veterinarian to conduct such tests for tuberculosis on such cattle.''

By the express provisions of the statute the authority to examine is given. There is no merit to defendant's contention that the eradication program was not adopted in Jackson county and therefore authority was not given to the commissioner or those representing him to make an examination and under proper conditions to test domestic animals. This record discloses that both by popular vote and by action of its board of supervisors, Jackson county adopted or approved a program of eradicating bovine tuberculosis in that county. It is true, as pointed out by defendant, that the act does not specifically provide the method of adoption by a county; but in the absence of a specific provision as to adoption in some other manner, it should be held that the action taken in Jackson county was sufficient. Defendant's contention that because his herd of cattle had been tested and found free from tuberculosis some three or four years previous he was not obliged to submit to a second test on this occasion, is not well founded. It is obvious that the purpose of this statute is to eradicate a disease said to be highly infectious and contagious. Surely it cannot be contended that this result was expected to be accomplished and such a condition produced by a single test.

The grounds upon which the defendant attacks the constitutionality of Act No. 13, Pub. Acts 1921,

are stated above.  This act abolished the department of animal industry, created the State department of agriculture, and provided that the department of agriculture "shall exercise the powers and perform the duties now vested by law in the department of animal industry," as set forth in Act No. 181, Pub. Acts 1919.  The title to Act No. 13, Pub. Acts 1921, is:

"An act to promote the agricultural interests of the State of Michigan; to create a State department of agriculture; to define the powers and duties thereof; to provide for the transfer to and vesting in said department of powers and duties now vested by law in certain other State boards, commissions and officers, and to abolish certain boards, commissions and officers the powers and duties of which are hereby transferred."

We think the foregoing title is not open to the objection urged by the defendant that it does not adequately express the object of the act, nor do we find that the act embraces more than one object.  It is true that by the terms of the act the powers and duties theretofore vested in various departments and commissions were transferred to the State department of agriculture; but the act as a whole is one to promote the agricultural interests of the State, and it is so stated in the title.  We need not here pass upon the question as to whether all of the duties sought to be vested by this act in the State department of agriculture are germane to the title of the act; but it is sufficient for us to hold that the duties and powers thus transferred from the department of animal industry to the State department of agriculture were such as "promote the agricultural interests in the State."  Such is clearly the fact, and we so hold.

The remaining constitutional objection is that by passing Act No. 13, Pub. Acts 1921, the legislature sought to revise, alter, and amend Act No. 181, Pub. Acts 1919, and this without repassing the latter act or publishing the same at length, as required by the Michigan Constitution (article 5, § 21). Except to the extent that it was expressly done by a provision in the act of 1921, we do not understand that there was any attempt or intention thereby to revise, alter, or amend the provisions of the act of 1919. By the express terms of the 1921 enactment, the department of animal industry was abolished; and the powers and duties of that department were transferred to the State department of agriculture. The portion of Act No. 181, Pub. Acts 1919, which prescribes these powers and duties was not "revised, altered, or amended." · It still stands as a part of the statutory law of the State, and therefore there was no occasion for the re-enactment or republication of that portion of the statute. This was the construction placed upon the constitutional provision by Mr. Justice Cooley over 60 years ago, and it has since been considered settled law in this State. The legislature of 1865 passed Act No. 78, entitled "An act to establish a police government for the city of Detroit." This act provided (section 36): .

"The offices of city marshal and assistant marshal of the city of Detroit is hereby abolished, and the duties of said office shall hereafter be performed by the superintendent of police, or by the captains and sergeants of police, under his directions, in accordance with the provisions of this act."

In passing upon the constitutionality of the act, Justice Cooley said:

"It is next objected that the law is invalid because

in conflict with section twenty-five of article four of the Constitution (1850), which provides that 'no law shall be revised,. altered or amended by reference to its title only; but the act revised, and the section or sections of the act altered or amended, shall be re-enacted and published at length.'

"The act before us does not assume in terms, to revise, alter or amend any prior act, or section of an act, but by various transfers of duties it has an amendatory effect by implication, and by its last section it repeals all inconsistent acts. We are unable to see how this conflicts with the provision referred to. If, whenever a new statute is passed, it is necessary that all prior statutes, modified by it by implication should be re-enacted and published at length as modified, then a large portion of the whole code of laws of the State would require to be republished at every session, and parts of it several times over, until, from mere immensity of material, it would be impossible to tell what the law was. If, because an act establishing a police government modifies the powers and duties of sheriffs, constables, water and sewer commissioners, marshals, mayors and justices, and imposes new duties upon the executive and the citizen, it has thereby become necessary to re-enact and republish the various laws relating to them all as now modified, we shall find, before the act is completed, that it not only embraces a large portion of the general laws of the State, but also that it has become obnoxious to the other provisions referred to, because embracing a large number of objects, only one of which can be covered by its title.

"This constitutional provision must receive a reasonable construction, with a view to give it effect. The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in

regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred to but not republished, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the Constitution wisely prohibited such legislation. But an act complete in itself is not within the mischief designed to be remedied by this provision, and cannot be held to be prohibited by it without violating its plain intent." *People* v. *Mahaney,* 13 Mich. 481, 496, 497.

In so far as the act under consideration revises, alters, or amends Act No. 181, Pub. Acts 1919, it does so in express language, published at length; and in so far as the change or alteration is by implication merely, it does not offend the constitutional provision. In commenting on the above quotation from *People* v. *Mahaney, supra,* Justice COOLEY said in his Constitutional Limitations:

"If this is a correct view of the purpose of the provision, it does not seem to be at all important to its accomplishment that the old law should be re-published, if the law as amended is given in full, with such reference to the old law as will show for what the new law is substituted. * * * It should be observed that statutes which amend others by implication are not within this provision; and it is not essential that they even refer to the acts or sections which by implication they amend." Vol. 1, Cooley's Constitutional Limitations (8th Ed.), p. 314.

See, also, *People* v. *Wands,* 23 Mich. 384; *Swartwout* v. *Railroad Co.,* 24 Mich. 388, 399; *Attorney General* v. *Parsell,* 100 Mich. 170; and *People* v.

*Shuler,* 136 Mich. 161, where Justice Carpenter, speaking for the court concerning the question now under consideration, said:

"We think this contention is answered by *People* v. *Pritchard,* 21 Mich. at page 241, where it is said: 'It is a full compliance with the terms as well as the purpose of that provision (viz., the constitutional provision under consideration) if the section as amended is set forth at length, with such reference to the old law as will show for what the new law is substituted.'"

In *Fornia* v. *Wayne Circuit Judge,* 140 Mich. 631, this court held (quoting syllabus):

"Act No. 31, Pub. Acts 1903, substituting the county clerk for the Wayne county jury commissioners in drawing juries for that county, and not otherwise changing the procedure, and not assuming in terms to revise, alter or amend any prior act or section of an act, but by various transfers of duties, having an amendatory effect by implication, does not conflict with the provision of the Constitution requiring acts amended or revised to be republished at length, though it contains a clause which repeals all inconsistent acts."

A holding to the same effect will be found in *Grinnell Brothers* v. *Moy,* 230 Mich. 26.

In addition to the objections above mentioned, it is also urged in defendant's brief that probable cause of the presence of tuberculosis in defendant's herd was not shown by the people and therefore an examination or test was not justified. This objection might be passed by merely noting that it was not raised in the lower court. However, we may add that in our judgment the record is sufficient to justify the conclusion that the State authorities who sought to make this examination were justified in their de-

termination that there was probable cause to believe that some of the cattle in Jackson county had tuberculosis. By proclamation issued in accordance with the statute, the whole county of Jackson was under quarantine because bovine tuberculosis was there prevalent. The county had adopted the program of eradication and this program could not be successfully carried out except by the examination of all the herds in the county, including that of the defendant. The statute gave this right and the defendant should not have resisted the operation of the law. So far as appears from this record his conviction was regular, and is affirmed.

FEAD, CLARK, and SHARPE, JJ., concurred with NORTH, C. J.

POTTER, J. (*dissenting*). The defendant was charged with being, in 1927, in possession and control of livestock in Jackson county which was reasonably suspected of being affected with a contagious, infectious, or communicable disease, and with having refused to allow the deputy State veterinary to examine such livestock, contrary to the provisions of Act No. 181, Pub. Acts 1919, as amended; and with having prevented, hindered, and refused to allow an authorized veterinarian to conduct tests for bovine tuberculosis upon such cattle, contrary to the provisions of Act No. 181, Pub. Acts 1919, as amended. Defendant waived trial by jury, and, by his counsel, at the conclusion of the proofs, filed a written motion to dismiss the cause and discharge defendant; which motion was denied. The motion to dismiss was based, among other things, upon the reason that:

"Act No. 13, Pub. Acts 1921, which gives the com-

missioner of agriculture the supposed power to enforce the provisions of Act No. 181, Pub. Acts 1919, is null and void and the commissioner has no power in this case because said Act No. 13 is void for the following reasons:

"(a) The law embraces more than one object.

"(b) That the objects of said law were not fully expressed in its title.

"(c) That the sections of large numbers of the laws that were 'revised, altered and amended,' by said Act No. 13 were not re-enacted or published at length.

"All of which are in violation of article 5, section 21, of the State Constitution of Michigan."

The facts, so far as the question herein discussed is concerned, are not in dispute. They are sufficient to warrant a conviction of defendant if Act No. 181, Pub. Acts 1919, and Act No. 13, Pub. Acts 1921, are valid.

It was jurisdictional to charge the violation by defendant of Act No. 181, Pub. Acts 1919, as amended, because, by Act No. 13, Pub. Acts 1921, the State department of agriculture is to exercise the powers and perform the duties formerly vested by law in the department of animal industry and the State veterinary board. The act provides that:

"The departments, boards, commissions and officers whose powers and duties are hereby transferred to the State department of agriculture shall be abolished."

Section 21 of article 5 of the Constitution provides:

"No law shall embrace more than one object, which shall be expressed in its title. No law shall be revised, altered or amended by reference to its title

only, but the act revised and the section or sections of the act altered or amended shall be re-enacted and published at length.''

The constitutional provision relied upon does not prohibit the passage of complete and independent legislative enactments.

''An act which on its face is a complete and perfect act of legislation and does not purport to amend prior legislation is not interdicted by such a provision, although it amends by implication other legislation on the same subject.'' 36 Cyc. p. 1064.

Is Act No. 13, Pub. Acts 1921, involved in this case, a new, complete, and perfect independent piece of legislation? If it defines the powers and duties of the commissioner of agriculture without resort to or dependence on any other statute—if it is complete in itself, independent of other legislation—then it is valid; but, if it is insufficient to sustain defendant's conviction, if it does not define the offense with which he is charged, or fix its punishment, if to ascertain the necessary elements of the offense and the punishment prescribed for it resort must be had to other legislative acts, then it is not a complete and independent act, because it depends upon other legislation to define the offense and fix the punishment.

Act No. 181, Pub. Acts 1919, created a department of animal industry abolished by Act No. 13, Pub. Acts 1921. It provided for the appointment of a State commissioner of animal industry, which office was abolished by Act No. 13, Pub. Acts 1921. It provided for the appointment by the governor of two advisory commissioners of animal industry, which offices were abolished by Act No. 13, Pub. Acts 1921. It provided the governor should appoint a State veterinarian on the recommendation of the

State commissioner of animal industry. This provision was nullified by Act No. 13, Pub. Acts 1921. It fixed the salary of the State commissioner of animal industry. The statutory salary was abolished by Act No. 13, Pub. Acts 1921. It provided the State commissioner of animal industry should fix the salary of the State veterinarian. This was changed by Act No. 13, Pub. Acts 1921. The commissioner of animal industry was given general charge and oversight of the protection of the health of domestic animals. This duty was by Act No. 13, Pub. Acts 1921, vested in the department of agriculture. It was made the duty of the commissioner of animal industry to make rules and regulations for separating, handling, treating, feeding, and caring for diseased animals, for segregation and isolation. All these duties and the rules made thereunder were done away with by Act No. 13, Pub. Acts 1921. They are now to be discharged and made by the commissioner of agriculture and the agents and employees of the department of agriculture. The commissioner of animal industry might destroy animals to prevent the spread of infectious diseases. This duty is now to be performed by the commissioner of agriculture or his agents or employees. The State commissioner of animal industry was to appraise animals to be killed for the purposes above named, and issue his certificates for the same which were to be paid by the auditor general. This duty, by Act No. 13, Pub. Acts 1921, is now to be discharged by some one else. A person who refused to permit the State commissioner of animal industry to examine his stock might be guilty of a misdemeanor. This statute, as revised, altered, and amended, means that it is an offense to refuse to permit an examination of livestock by the commissioner of agriculture

or any of his designated employees. These and a multitude of other changes in Act No. 181, Pub. Acts 1919, by Act No. 13, Pub. Acts 1921, show that a person like the defendant, in order to ascertain his rights and duties, could not do so either from Act No. 13, Pub. Acts 1921, or Act No. 181, Pub. Acts 1919, standing alone. He could not ascertain from Act No. 181, Pub. Acts 1919, anything about the power and authority of the commissioner of agriculture, an officer not named therein, or of his agents or employees. To ascertain the rights and correlative duties of either the State officers or employees attempting to enforce the provisions of Act No. 181, Pub. Acts 1919, or of himself, the defendant would have to be familiar both with Act No. 181, Pub. Acts 1919, and Act No. 13, Pub. Acts 1921. He would have to compare the provisions of the prior law left in force with the later law revising, altering, and amending it. Defendant is charged under the first enacted statute as amended. The people are attempting to act under the first enacted statute as amended. The defendant, to know his rights and duties, must examine the old law and the new law together, and disentangle a clear view of his rights and duties from the confusion and obscurity of conflicting statutes. When, as in this case, the law governing defendant's rights and duties must be created out of the old and the new statutes together, the amendatory statute, incomplete in itself, dependent for its completeness upon the prior enacted statute, falls within the language of the constitutional provision above quoted, and the reasons which led the people to adopt, as a part of the fundamental law, the clear and comprehensive method of amending statutes above quoted.

An amendment to a statute is a change or altera-

tion in its language. 36 Cyc. p. 1053. A change in the existing provisions of an act. *Sheridan* v. *Salem,* 14 Ore. 328 (12 Pac. 925). A broad definition of the word "amendment" would include any alteration or change. *State* v. *Le Blond,* 108 Ohio St. 41 (140 N. E. 491). Additional provisions not affecting existing ones are not within the constitutional prohibition. *Sheridan* v. *Salem, supra.* A law cannot be said to be either revised or amended when it is abrogated altogether. *Falconer* v. *Robinson,* 46 Ala. 340.

"In legislative parlance 'amendment' is an alteration or change of something proposed in a bill or established as law. (Bouvier's Law Dictionary.) A statute which adds a provision to a section of an existing statute is an amendment. (*Henderson* v. *City of Galveston,* 102 Tex. 163 [114 S. W. 108]). Generally speaking, an amendment repeals or changes some provision of a pre-existing law or adds something thereto. (*Board of Public Instructions* v. *Board of Commissioners,* 58 Fla. 391 [50 South. 574]). The word 'amendment' is clearly susceptible to a construction which would make it cover several propositions, all tending to effect and carry out one general object or purpose, and all connected with one subject." *State* v. *Cooney,* 70 Mont. 355 (225 Pac. 1007, 1009).

"A law is revised or amended, not when it is repealed, but when it is, in whole or in part, permitted to remain, and something is added to or taken from it, or it is in some way changed or altered to make it more complete and perfect, or to fit it the better to accomplish the object or purpose for which it was made, or some other object or purpose." *Falconer* v. *Robinson,* 46 Ala. 340.

Act No. 181, Pub. Acts 1919, is not revised, altered, or amended by reference to its title. No ref-

erence whatever is made as such to Act No. 181, Pub. Acts 1919, by its number, title, or otherwise in Act No. 13, Pub. Acts 1921. The revision, alteration, or amendment of Act No. 181, Pub. Acts 1919, was made by abolishing the department of animal industry and the State commissioner of animal industry, and creating a new department and transferring the powers and duties of the department of animal industry and State commissioner of animal industry to the new department so created. By evading specific mention of Act No. 181, Pub. Acts 1919, by title or otherwise, may the constitutional mandate be rendered inoperative?

Under section 21, art. 5, Constitution, the following principles governing the amendment of statutes seem to be established by the authorities:

*First:* A plurality of objects is prohibited; *second:* The title of an act must fairly express the subject of legislation; *third:* Matters can only be included in an amendatory act which are germane to the original act; *fourth:* An act not complete in itself but which is clearly amendatory in its character and scope must set forth the section or sections as amended and repeal the original section or sections of the amended act. *State* v. *Tibbets,* 52 Neb. 228 (71 N. W. 990, 66 Am. St. Rep. 492). Cooley, Const. Lim. (8th Ed.) pp. 313–319.

The second clause of the constitutional provision above quoted is both prohibitory and mandatory. It forbids the amendment by mere reference to the title of an act and enjoins the insertion of the section or sections amended in the amendatory act at length.

"The clause of the Constitution invoked in this case is both prohibitory and mandatory. It forbids

amendment by mere reference to title, and enjoins the insertion of the section or sections amended at length. * * * That the act, when compared with other legislation, plainly discloses the legislative intent, does not obviate this objection. Legislation cannot be effected by means and in modes prohibited by the fundamental law." *Board of Fire Commrs.* v. *Trenton,* 53 N. J. Law, 566 (22 Atl. 731, 732).

"This constitutional provision must receive a reasonable construction, with a view to give it effect. The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred to but not republished, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the Constitution wisely prohibited such legislation." *People* v. *Mahaney,* 13 Mich. 481; Cooley's Constitutional Limitations (8th Ed.), p. 314.

"The object of the constitutional amendment was to show the lawmaker the true meaning of the proposed enactment without the necessity of resorting to the old law. * * * No member of the legislature, called upon to cast his vote on the passage of the act, would be informed by an inspection what particular rights or privileges were designed to be conferred; nor would the public, by inspection, be informed of the nature of the legislation about to be adopted." *Haring* v. *State,* 51 N. J. Law, 386 (17 Atl. 1079, 1081).

"The object of this constitutional provision is to prevent obscurity, confusion and uncertainty in the laws; likewise to defeat attempted impositions in the enactment of laws. It forbids, among other things, amending a statute simply and solely by striking out or inserting certain words, phrases or clauses; a proceeding formerly common, through which laws became complicated and their real meaning often difficult of ascertainment even by the legal profession. It also in a measure frustrates the passage of vicious legislation through amendments, the scope or effect of which is not apparent from the acts themselves, by means whereof they are made. It deals with such amendments of existing legislation as change the application, force or effect of an act, or a portion thereof." *Edwards* v. *Railroad Co.,* 13 Colo. 59 (21 Pac. 1011, 1013).

"The object and intent of the constitutional provision was to prevent statute laws relating to one subject from being made applicable to laws passed upon another subject, through ignorance and misapprehension on the part of the legislature, and to require that all acts should contain within themselves such information as should be necessary to enable it to act upon them intelligently and discreetly." *People* v. *Squire,* 107 N. Y. 593 (14 N. E. 820, 822, 1 Am. St. Rep. 893).

A provision, "which, if heeded, would greatly tend, by the prevention of ambiguities and uncertainties in legislative enactments to discourage litigious strife, and one which, if obeyed, in the instance under discussion, might have entirely prevented or at least have given a much narrower basis for the present litigation." *French* v. *Woodward,* 58 Mo. 66.

"The constitutional provision relates to those cases where the act is strictly amendatory or revisory in its character. Its prohibition is directed against the practice of amending or revising laws by additions, or other alterations, which, without the

presence of the original are usually unintelligible.'' *Tuscaloosa Bridge Co.* v. *Olmstead,* 41 Ala. 9; *Rice* v. *Westcott,* 108 Ala. 353, (18 South. 844).

It has so often been settled by the adjudications of this court that an amendment of a statute or section cannot be made without setting out the amended statute or section at full length, that the question should be considered thoroughly or finally settled. *Armstrong* v. *Berreman,* 13 Ind. 422; *Attorney General* v. *Loomis,* 141 Mich. 547; *People* v. *Shuler,* 136 Mich. 161; *Mok* v. *Detroit Bldg. & Svgs. Ass'n,* 30 Mich. 511; *People* v. *Pritchard,* 21 Mich. 236; 36 Cyc. p. 1060.

Here there is no attempt to enact a new and independent statute upon the same subject-matter as Act No. 181, Pub. Acts 1919, but an attempt is made by Act No. 13, Pub. Acts 1921, to alter and amend Act No. 181, Pub. Acts 1919, so as to abolish the department and enforcing officers named in it; to transfer, without mention of Act No. 181, Pub. Acts 1919, all of the powers and duties of the department created thereby and the enforcing officers named therein to the State department of agriculture without setting forth the law in the statute as it would appear after being so revised, altered, and amended. If this can be done, as was attempted, there is no limit to the extent to which a statute may be revised, altered, and amended without setting forth the amended statute at full length.

In *Martin* v. *Gilliam County,* 89 Ore. 394 (173 Pac. 938), it is said:

''Here there is no attempt to enact a new and independent statute upon the same subject as the act of 1913, *supra,* but an attempt to insert into it, and by reference to it, certain provisions enlarging its

scope without setting forth the statute as it would appear after being so revised. If it can be done in this instance there is no limit to the extent to which statutes can be revised or amended without setting forth the amended statute at full length, and the constitutional provision above quoted would, therefore, be rendered nugatory.''

The precise question is whether, by the passage of Act No. 13, Pub. Acts 1921, Act No. 181, Pub. Acts 1919, and many other statutes, none of which are specifically mentioned either by number, title, or otherwise, in Act No. 13, Pub. Acts 1921, may be altered, revised or amended. This question is not new.

''Even though an act professes to be an independent act and does not purport to amend any prior act, still if, in fact, it makes changes in an existing act by adding new provisions and mingling the new with the old on the same subject so as to make the old and the new a connected piece of legislation covering the same subject, the later act must be considered an amendment of the former and as within the constitutional prohibition.'' *Galpin* v. *City of Chicago*, 269 Ill. 27 (109 N. E. 713, 716, L. R. A. 1917 B, 176).

''Where, as in this case, the new act is not complete, but refers to a prior statute, which is changed, but not repealed, by the new act, so that the full declaration of the legislative will on the subject can only be ascertained by reading both statutes, the very obscurity and the tendency to confusion will be found which constitute the vice prohibited by this section of the constitution.'' *Copland* v. *Pirie*, 26 Wash. 481 (67 Pac. 227, 228, 90 Am. St. Rep. 769); *In re Buelow* (D. C.), 98 Fed. 86.

''If the new act is a complete and entire act of legislation on the subject with which it deals, it will

not be subject to constitutional objection; but if it merely attempts to amend the law by mingling new provisions with the old, or by adding new provisions so as to create out of the old and new together the law on that subject, it must be regarded as amendatory to the old, and the law must be inserted at length in the new act." *In re Lovett* (D. C.), 2 Fed. (2d) 307, 308.

"Even though an act professes to be an independent act and does not purport to amend any prior act, still if, in fact, it makes changes in an existing act by adding new provisions and mingling the new with the old on the same subject so as to make of the old and the new a connected piece of legislation covering the same subject, the latter act must be considered an amendment of the former and as within the constitutional prohibition." 25 R. C. L. pp. 874, 875.

"The character of an act, whether amendatory or complete in itself, is to be determined not by its title, alone, nor by the question whether it professes to be an amendment of existing laws, but by comparison of its provisions with prior laws left in force, and if it is complete on the subject with which it deals it will not be subject to the constitutional objection, but if it attempts to amend the old law by intermingling new and different provisions with the old ones or by adding new provisions, the law on that subject must be regarded as amendatory of the old law and the law amended must be inserted at length in the new act." *Nelson* v. *Hoffman,* 314 Ill. 616 (145 N. E. 688, 690); *People* v. *Knopf,* 183 Ill. 410 (56 N. E. 155).

"Where an act incomplete in itself contains new provisions commingled with old ones, so that it is necessary to read two acts together in order to determine what the law is, such act is an amendatory one and invalid under this provision of the constitution, whether it purports to amend or revive another

statute or not." *State of Illinois* v. *Milauskas,* 318
Ill. 198 (149 N. E. 294, 297); *People* v. *Crossley,* 261
Ill. 78 (103 N. E. 537).

Act No. 13, Pub. Acts 1921, plainly violates the
provisions of section 21, art. 5, of the Constitution.

(*a*)    There is nothing in the title of Act No. 13,
Pub. Acts 1921, which in any way indicates its object
was to provide for the creation of a board of man-
agers of State fairs to consist of 20 members to be
appointed by the governor and confirmed by the
senate.

(*b*)    Act No. 13, Pub. Acts 1921, amends not only
Act No. 181, Pub. Acts 1919, as we have seen, but
a great number of other acts.    Any one, upon con-
sulting Act No. 13, Pub. Acts 1921, which does not
refer to the acts amended by title or number, must
search through the previous enactments of the legis-
lature in order to ascertain the powers and duties
of the State department of agriculture created by
Act No. 13, Pub. Acts 1921.

(*c*)    Act No. 13, Pub. Acts 1921, clearly amends
Act No. 181, Pub. Acts 1919, by abolishing the en-
forcing officers provided in Act No. 181, Pub. Acts
1919, and their subordinates, and transferring their
powers and duties to new enforcing officers created
by Act No. 13, Pub. Acts 1921, or provided to be
created by the commissioner of agriculture.

(*d*)    It is entirely immaterial whether Act No. 13,
Pub. Acts 1921, purports to amend Act No. 181, Pub.
Acts 1919, or not.    It in fact does alter and amend
it, and therefore it must comply with the constitu-
tional provision of republication.

"It is a full compliance with the terms as well as
the purpose of that provision, if the section as
amended is set forth at length, with such reference

to the old law as will show for what the new law is substituted.'' *People* v. *Pritchard,* 21 Mich. 236; *People* v. *Shuler,* 136 Mich. 161.

Act No. 13, Pub. Acts 1921, does not set forth the law or the sections of the law as amended, and under all of the authorities this is necessary to comply with the constitutional provision under consideration. *People* v. *Pritchard, supra; People* v. *Shuler, supra;* 36 Cyc. pp. 1060–1062; Cooley's Const. Limitations (8th Ed.), p. 315.

(*e*) Defendant, to ascertain the rights and duties of the agents and employees of the department of agriculture and of himself, must extricate such knowledge from the repugnant provisions of conflicting statutes, new and old, and from their overlapping, inconsistent, and obscure provisions, obtain that clear knowledge of his rights and duties which the people by the Constitution sought to make available by his reading the last statute upon the subject.

The people contend that if defendant's contention is well taken, the legislature has been proceeding upon a theory which, if overturned, will seriously affect the governmental activities of the State, and call attention to other acts providing for the abolition of administrative departments, officers, boards, and commissions and the transfer of their powers and duties to other boards or departments without specifically naming them or referring to prior legislative acts. So far as this question is entitled to consideration:

The legislature must comply with the constitutional provision so long as it remains in force.

If the people of the State are not desirous of having the legislature comply with the constitutional provision above quoted, then such provision may be abolished by an amendment to the Constitution;

but the legislature has no power and authority, while the provision of the Constitution remains in force, to set it aside by an act of legislation. The members of the legislature are but agents of the people. They derive all their power and authority from the people. The Constitution was adopted by the people in the exercise of their sovereignty. It is the fundamental law. It may not be repealed by the legislature.

This court ought not lightly to declare statutes unconstitutional. The general presumption of the regularity of official conduct carries with it the presumption that the members of the legislature, in the passage of Act No. 13, Pub. Acts 1921, acted in accordance with the provisions of the Constitution, but this court, as a co-ordinate department of the government, bound by oath to support the Constitution, is bound to give effect to the will of the people as expressed in the Constitution.

A statute passed in violation of the constitutional provision above quoted is void. 36 Cyc. p. 1065; *Mok* v. *Detroit Bldg. & Svgs. Ass'n,* 30 Mich. 511.

Act No. 13, Pub. Acts 1921, was passed in direct violation of the constitutional provision above referred to, and, being unconstitutional, neither the department of agriculture nor its agents or employees have any power or authority to enforce the provisions of Act No. 181, Pub. Acts 1919. Defendant's conviction should be reversed and he discharged.

WIEST and McDONALD, JJ., concurred in the result. The late Justice FELLOWS took no part in this decision.